# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ANTHONY L. MCKINNEY, | : | Case No. 2:20-cv-1450 |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | District Judge Michael H. Watson |
| vs. | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| DENISE PADDOCK, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## REPORT AND RECOMMENDATIONS[1]

This matter is presently before the Court on the parties' cross-motions for summary judgment.  (Doc. #s 82, 83).[2]  Both Plaintiff and Defendants filed responsive memorandums to the opposing party's motions.  (Doc. #s 85, 93).  The pending motions have been referred to the undersigned for a Report and Recommendations pursuant to 28 U.S.C. § 636 and General Order 22-05.  This matter is now ripe for review.

## I.    BACKGROUND

Plaintiff, Anthony L. McKinney, who is currently in the custody of Ohio Department of Rehabilitation and Correction ("ODRC") serving his sentence at Madison Correctional Institution, brought this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff's Complaint consists of 44 handwritten pages asserting a myriad of allegations against the Warden of Ross Correctional Institution ("RCI"), as well as, employees of London Correctional Institution ("LOCI"), including,

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.
[2] Plaintiff's request for an extension of time was addressed in a previous Order by the Court on June 17, 2022. (Doc. #88, *PageID* #1464).

Denise Paddock, Lieutenant Ryan Kammer, Lieutenant Shawn Frye, former Sergeant Brian Preston, Warden Norman Robinson, and "hearing officers unknown." (Doc. #4).

Specifically, the claims in Plaintiff's Complaint initially stem from an incident that occurred on March 18, 2019, when Plaintiff was working in the LOCI law library with another inmate and requested that the law librarian print certain documents. (Doc. #4, *PageID* #146). The law librarian, Defendant Paddock, printed the documents requested by Plaintiff and identified them as containing content related to the Sovereign Citizens, which is identified in Ohio prisons as an active security threat group ("STG"). *Id*. at 146-147, 187; Doc. #82-3, *PageID* #1240. Defendant Paddock informed Plaintiff that he was not permitted to have Sovereign Citizen documents and instructed him to take them to another corrections officer for inspection. (Doc. #4, *PageID* #147; Doc. #82-3, *PageID* #1240). Plaintiff was then escorted to Defendant Frye's office where he was instructed to hand over the disputed documents so that they could be reviewed by LOCI's legal counsel. (Doc. #4, *PageID* #s 148, 187). While Plaintiff initially objected, he eventually complied and relinquished the disputed documents to Defendant Frye. (Doc. #4, *PageID* #148; Doc. #83-8, *PageID* #s 1318-19). No conduct report was issued at this time. (Doc. #4, *PageID* #s 148-49; Doc. #83-8, *PageID* #1319).

On March 31, 2019, Plaintiff issued an informal complaint at the prison kiosk, detailing the March 18, 2019 incident and alleging numerous claims against Defendants Paddock and Frye. (Doc. #4, *PageID* #s 149-50; Doc. #83-1, *PageID* #1291). As part of this grievance, Plaintiff made several "demands" of LOCI, including releasing him from custody, returning his personal property, denying Defendant Frye's request to use credit, discharging Defendants Paddock and Frye from their positions, hiring new library employees, and providing Plaintiff more time in the law library. (Doc. #4, *PageID* #s 149-150, 153-57; Doc. #83-1, *PageID* #1291).

2

Meanwhile, LOCI legal counsel conducted a review of the documents taken from Plaintiff and ultimately concluded that the documents did, in fact, contain unauthorized content related to the Sovereign Citizens. (Doc. #4, *PageID* #187). As a result, a corrections officer, Defendant Kammer, authored a conduct report on April 9, 2019, describing the incident and his finding that Plaintiff's possession of the documents violated "Rule 17 - Engaging in unauthorized group activities." *Id*.  Before Plaintiff received notice of the conduct report, he reinitiated his informal grievance at the prison kiosk, informing LOCI prison officials that they demonstrated their "general acquiescence" to his demands by virtue of their failure to respond, thereby constituting an "agreement" to his terms and demands "by operation of law." (Doc. #4, *PageID* #s 149-57; Doc. #83-1, *PageID* #1291). The next morning, Plaintiff received the April 9, 2019 conduct report informing him of Defendant Kammer's finding that he violated Rule 17. (Doc. #4, *PageID* #s 150, 187).

Due to the alleged violation of Rule 17, the matter was referred to the Rules Infraction Board ("RIB").  *Id*. at 190.  Believing that such charges were "fictitious" and that he already had a "contract" with prison officials on the alleged violation, Plaintiff decided not to participate in the RIB proceedings.  *Id*. at 149-158.  When Plaintiff was brought to the RIB hearing on April 18, 2019, he informed them of his general objections to the procedure and their jurisdiction but otherwise did not participate in defending the charge. *See id*. at 149-58, 190-96.  As a result, the RIB concluded that Plaintiff violated Rule 17 and sentenced him to 90 days in Limited Privilege Housing ("LPH" or "the hole").  *Id*. at 149-158, 190-96.  After the hearing, Plaintiff was brought to a holding cell where he was strip-searched by two unknown corrections officers for contraband. *Id*. at 153-54.

3

The next morning, on April 19, 2019, Defendant Preston, a corrections officer, was sent to Plaintiff's cell to pack up his belongings since he had been moved to LPH. (Doc. #4, *PageID* #158; Doc. #82-6, *PageID* #1262).  Upon arriving at Plaintiff's cell, Defendant Preston concluded that Plaintiff was in violation of "Rule 51 – possessing contraband and materials in excess of the permitted amount for inmates" and, thus, issued a new conduct report on this basis. (Doc. #4, *PageID* #s 158-60, 198; Doc. #82-6, *PageID* #s 1260-62).  According to the conduct report, the excess contraband included legal papers, legal books, two towels, one pair of altered sweatpants, two pairs of socks, one state shirt, and one pillow.  (Doc. #4, *PageID* #198).  Plaintiff did not participate in the RIB proceedings stemming from this conduct report and was found to be in violation of Rule 51. *Id.* at 198-203. While no additional time in LPH was imposed, Plaintiff's locker boxes were temporarily held while he was in segregation and when he was transferred from LOCI to RCI. *Id.* at 161, 198-203.

Due to the abuses he alleges he has suffered, Plaintiff filed the instant action on March 24, 2020. (Doc. #4).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Additionally, this initial burden may be satisfied by the moving party "pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has

no evidence to support an essential element of his or her case." *Barnhart v. Pickrel Schaeffer & Ebeling Co., L.P.A.,* 12 F.3d 1382, 1389 (6th Cir. 1993).

The burden then shifts to the non-moving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Here, in opposing summary judgment, the non-moving party cannot "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986). Indeed, unverified pleadings and self-serving affidavits alone are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Washington Cty. Career Ctr*., 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013).

Finally, in ruling on a motion for summary judgment, the court is "not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. *See id*.

## III.    DISCUSSION

As noted above, Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides a civil cause of action for persons "who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem*, 378 F.3d 566, 576 (6th Cir. 2004). In order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must

show that the deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250 (1988); *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 814 (6th Cir. 1996). Further, because § 1983 is a method for vindicating federal rights as opposed to a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807 (1994).

In this case, Plaintiff alleges that Defendants violated his constitutional rights under the First, Fourth, Eighth, and Fourteenth Amendments. In response, Defendants maintain that there is no genuine dispute of material fact related to these constitutional claims and, thus, they are entitled to judgment as a matter of law. The undersigned will address each of these claims in turn.

### A. Retaliation

Both Plaintiff and Defendants move for summary judgment on Plaintiff's retaliation claims. (Doc. #82, *PageID* #s 1217-23; Doc. #83, *PageID* #s 1277, 1284). Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *See Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To state a retaliation claim, a plaintiff must allege three elements: (1) that he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *Id.*

In this case, Plaintiff generally alleges multiple instances of retaliation against Defendants. (Doc. #4, *PageID* #s 156, 161, 178). Despite being inartfully pled, Plaintiff's Complaint appears to allege several adverse actions taken against him as a result of him filing an informal complaint at the prison kiosk, including the confiscation of his legal materials containing STG content; the issuance of the first conduct report; his subsequent sentence to LPH; the issuance of the second

6

conduct report; the subsequent confiscation of his property that was over the permitted limit; and his transfer to RCI. (Doc. #4, *PageID* #s 156, 161, 178).

In applying these elements to Plaintiff's claims, the parties do not dispute that Plaintiff engaged in protected conduct to the extent that he was working on legitimate legal work and by filing the informal complaint. (Doc. #82, *PageID* #s 1218-19). *See Herron v. Harrison,* 203 F.3d 410, 415 (6th Cir. 2000) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."); *see also Clark v. Johnston,* 413 F. App'x 804, 814 (6th Cir. 2011) (recognizing that inmates enjoy a First Amendment right to file grievances against prison staff). Accordingly, Plaintiff's conduct is sufficient to establish the first element of a retaliation claim.

The second prong of a retaliation claim evaluates whether there was an adverse action taken against the plaintiff. As noted above, Plaintiff identifies numerous events that he believes to constitute adverse action. Of these events, the undersigned finds that each could arguably constitute adverse action with the exception of his transfer to RCI. Indeed, the Sixth Circuit has routinely held that, absent extraordinary circumstances, transfer to another prison is not considered adverse for purposes of establishing a retaliation claim. *See e.g., Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003); *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013); *Mandela v. Campbell*, 181 F.3d 102 (Table) (6th Cir. 1999). As Plaintiff has not alleged any extraordinary circumstances arising from his transfer from LOCI to RCI, it cannot be found to constitute an adverse action. However, assuming *arguendo* that Plaintiff's allegations related to the confiscation of his property, the issuance of the conduct reports, and his sentence to LPH constituted adverse action, the undersigned finds that the second element is met and will proceed to the final step.

The third and last prong of a retaliation claim is causation. Defendants challenge Plaintiff's

ability to produce evidence of a "causal connection" between the first two elements of his retaliation claim.  Under the third element, "the subjective motivation of the defendants is at issue." *Thaddeus-X*, 175 F.3d at 399.  Notably, "conclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state ... a claim under § 1983.'" *Harbin–Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). Instead, retaliation claims must include a "chronology of events from which retaliation may plausibly be inferred." *Ishaag v. Compton*, 900 F.Supp. 935 (W.D. Tenn. 1995) (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)).

Apart from his conclusory allegations that he was retaliated against for utilizing the grievance procedure, Plaintiff's Complaint and summary judgment filings otherwise include no factual allegations suggesting that Defendants were motivated by protected conduct. To the contrary, the undisputed evidence establishes that Plaintiff's STG documents were taken on March 18, 2019, which was before Plaintiff initiated his informal complaint at the prison kiosk on March 31, 2019. (Doc. #4, *PageID* #s 148-53, 187).

Further, Defendant Kammer's issuance of the conduct report was a direct result of Plaintiff's violation of Rule 17. Indeed, Defendant Kammer states in the conduct report that the documents suspected as containing STG content were found in Plaintiff's possession on March 18, 2019 and that the subsequent investigation revealed that the documents were, in fact, associated with the unauthorized group, the Sovereign Citizens. *Id*. at 187.  As stated in the conduct report, Rule 17 prohibits inmates from "[e]ngaging in unauthorized group activities as set forth in paragraph (B) of [Ohio Administrative Code ("O.A.C.")] 5120-9-37[,]" which extends to an inmate knowingly or intentionally "[p]ossessing […] any material related to an unauthorized

group." *Id*; *see also* O.A.C.  5120-9-06(C)(17).  Having reason to believe that Plaintiff violated Rule 17, Defendant Kammer reasonably issued a conduct report pursuant to O.A.C. 5120-9-07(B), and the matter was referred to the RIB for a hearing. *Id*. Finally, while Plaintiff chose not to participate in the proceedings, the RIB (as opposed to Defendant Kammer or any other Defendant named in this case) found Plaintiff guilty of violating Rule 17 and sentenced him to LPH for 90 days under O.A.C. 5120-9-09(A)(4). *Id.* at 190-196.  Accordingly, despite Plaintiff's unsupported claims otherwise, the alleged adverse actions of Defendant Kammer's conduct report and the RIB's sentence to LPH were not motivated by the filing of Plaintiff's grievance on March 31, 2019.  Instead, these incidents were the direct result of Plaintiff's possession of STG contraband on March 18, 2019, which constituted a rule violation. Therefore, Defendant Kammer is entitled to summary judgment on Plaintiff's retaliation claim.

Similarly, Defendant Preston's pack up of Plaintiff's over-the-limit property was a direct result of his violation of Rule 51. As explained in Defendant Preston's conduct report, Plaintiff's cell contained legal materials and personal property in excess of the 2.4 cubic feet of property permitted by O.A.C. 5120-9-33. *Id*. at 198. With the exception of one legal box, Plaintiff appears to acknowledge that the property exceeded the permitted amount but nonetheless maintains that the pack up was performed in retaliation for his informal complaint. *Id*. at 158-160. Again, Plaintiff fails to allege any facts or present any evidence that would support a finding that his filing of the informal complaint motivated Defendant Preston to confiscate Plaintiff's property. Rather, the undisputed evidence supports a finding that, following Plaintiff's assignment to LPH, Defendant Preston was sent to Plaintiff's cell to move his belongings and found that the property exceeded the permitted amount, in violation of Rule 51.  (Doc. #4, *PageID* #158-60, 198; Doc. #82-6, *PageID* #1262).  As a result, Defendant Preston issued a conduct report and confiscated Plaintiff's

over-the-limit property on the basis of the rule violation and not in retaliation for Plaintiff utilizing the grievance procedure. Thus, Defendant Preston is entitled to judgment as a matter of law with respect to Plaintiff's retaliation claim.

Finally, to the extent that Plaintiff alleges general claims of retaliation against "Defendants" collectively, his claims fail as a matter of law. Again, in order to maintain a § 1983 claim, a Plaintiff must make a clear showing that each named defendant was personally involved in the activity that forms the basis of the complaint. *See e.g.*, *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) ("claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right"); *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596–97 (6th Cir. 2012) ("[C]ategorical references to 'Defendants'" do not meet this standard.). Accordingly, Plaintiff's general claims that "Defendants" retaliation against him are insufficient.

As such, the undersigned **RECOMMENDS** that Defendants' motion for summary judgment on Plaintiff's retaliation claims be **GRANTED** and that Plaintiff's motion on these claims be **DENIED**.

### B. Due Process

Both Plaintiff and Defendants also move for summary judgment on Plaintiff's due process claims. (Doc. #82, *PageID* #s 1223-25; Doc. #83, *PageID* #s 1272-76). While his Complaint and summary judgment filings are not the model of clarity, Plaintiff appears to allege multiple due process violations associated with the RIB proceedings that were held in connection to the conduct reports discussed above. Specifically, Plaintiff alleges that his procedural due process rights were violated by the fact that he was not provided with an appeal process for his grievance; the failure to list the names and titles of documents individually; the lack of adequate notice and lack of

receiving 24-hour notice of a hearing; RIB's proceeding without jurisdiction; and the failure to allow witnesses to be called. (*See* Doc. #4, *PageID* #s 148-154).  Further, Plaintiff alleges that his due process rights were violated when he was sentenced to 90 days in LPH and had some of his property confiscated. (Doc. #83, *PageID* #s 1283-84).

To prevail on a due process claim, a plaintiff must first prove that his life, liberty, or property interests were at stake. *Wilkinson v. Austin,* 545 U.S. 209, 221, 125 S.Ct. 2384 (2005). Prisoners have limited liberty interests because "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293 (1995). "Failing to follow proper procedures is insufficient to establish an infringement of a liberty interest." *Grinter v. Knight*, 532 F.3d 567, 574, 576 (citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)).  Rather, an inmate's only liberty interest protected by the Due Process Clause is "freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. "To determine whether changed conditions are 'atypical and significant,' a reviewing court considers both the duration and the nature of the more restrictive confinement relative to 'prison norms and to the terms of the individual's sentence.'" *Id.* (quoting *Harden–Bey v. Rutter,* 524 F.3d 789, 792–93 (6th Cir. 2008)).

Based on the foregoing, Plaintiff's claims must fail because he has not identified a constitutionally protected liberty interest that the prison disciplinary proceedings implicated. As noted above, Plaintiff's due process claims are premised on the Defendants' acts or omissions during his RIB proceedings (which Plaintiff himself refused to participate in). However, a plaintiff cannot premise a § 1983 claim on allegations that an institution's grievance procedure was inadequate and/or unresponsive because there is no inherent constitutional right to an effective

grievance procedure in the first place. *See Hewitt v. Helms*, 459 U.S. 460, 467, 103 S.Ct. 864, (1983)(overruled in part on other grounds by *Sandin*, 515 U.S. 472); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991). Thus, to the extent that Plaintiff's due process claims are premised on inadequate procedures during his RIB proceedings, his claims fail.

Additionally, Plaintiff's subsequent transfer to LPH is insufficient to implicate a constitutional liberty interest. As a general matter, an inmate's change in confinement conditions does not constitute a deprivation of liberty. *See e.g., Wilkinson,* 545 U.S. at 222–23 ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."), *Sandin*, 515 U.S. at 484-87 ("[D]iscipline in segregated confinement [does] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"). Instead, the only circumstances under which being placed in segregation implicates a liberty interest is when the confinement is an "atypical and significant hardship" in "extreme circumstances," such as when the placement in segregation is of indefinite duration or is excessively long. *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)).

Here, Plaintiff was placed in LPH for 90 days, which is not an indefinite or excessively long period of time. *See Bradley v. Evans,* No. 985861, 2000 WL 1277229, at *5–7 (6th Cir. Aug. 23, 2000) (holding that fourteen months in administrative segregation did not constitute an atypical and significant hardship). Additionally, Plaintiff's contention that he suffered an "atypical and significant hardship" because he was subject to a routine strip search prior to his transfer to LPH is without merit. *See Drummer v. Luttrell*, 75 F. Supp. 2d 796 (W.D. Tenn. 1999) (strip search of inmate as part of disciplinary procedure did not support inmate's Section 1983 action against

corrections officials alleging due process violations, since officials' actions did not impose atypical and significant hardship upon inmate); *Fatir v. Phelps*, No. CV 18-933-CFC, 2019 WL 2162720, at *8 (D. Del. May 17, 2019) ("a strip search does not, as a matter of law, impose an atypical and significant hardship in relation to the ordinary incidents of prison life as required under *Sandin* in order to constitute a 'liberty interest'") (internal citations omitted). In short, Plaintiff has not identified any "atypical or significant hardships" arising from his placement within the prison's LPH sufficient to create a liberty interest. Plaintiff's Complaint fails allege that the RIB proceedings resulted in the lengthening of his prison sentence, the withdrawal of good-time credits, or the deprivation of any necessities of life. In the absence of such allegations, Plaintiff's disciplinary sentence to 90 days in LPH is also insufficient to implicate federal due process concerns.

Finally, Plaintiff's claim that his property was taken from him without due process is without merit. While the Due Process Clause of the Fourteenth Amendment protects against the unlawful taking of a person's property by public officers, "[i]f satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury." *Jefferson v. Jefferson County Pub. Sch. Sys.*, 360 F.3d 583, 587-88 (6th Cir. 2004). Accordingly, in order to state a procedural due process claim under § 1983 "the plaintiff must attack the state's corrective procedure as well as the substantive wrong.*" Meyers v. City of Cincinnati*, 934 F.2d 726, 731 (6th Cir. 1991) (quoting *Vicory*, 721 F.2d at 1066). A plaintiff "may not seek relief under Section 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress [his] due process violations." *Jefferson*, 360 F.3d at 588.

In this case, Plaintiff fails set forth any explanation as to why such state remedies are inadequate. Instead, Plaintiff affirmatively pleads state law claims related to the deprivation of his property, including theft, larceny, conversion, and extortion, thus suggesting that he believes such remedies to be adequate to address his claims. (Doc. #4; *PageID* #s 159, 176); *see also Fox v. Van Oosterum*, 176 F.3d 342, 349 (6th Cir. 1999) (citing *Hudson*, 468 U.S. at 534-36) ("State tort remedies generally satisfy the post[-]deprivation process requirement of the Due Process Clauses."). Therefore, Plaintiff's property claim also fail as a matter of law.

Accordingly, the undersigned **RECOMMENDS** that Defendant's motion for summary judgment on Plaintiff's due process claims be **GRANTED** and Plaintiff's motion for summary judgment on these claims be **DENIED**.

## C.    Access to Courts

The parties have also moved for summary judgment on Plaintiff's claim regarding his First Amendment "access to courts" claims. (Doc. #82, *PageID* #s 1223-25; Doc. #83, *PageID* #s 1272-76). According to Plaintiff, Defendants "prevented Plaintiff from due [diligence] in his criminal case OSCR-10-7130." (Doc. #4, *PageID* #165). Specifically, he alleges that his access to the courts was violated by Defendants Paddock's and Frye's confiscation of his STG legal materials, Defendant Preston's confiscation of his over-the-limit legal materials, and the RCI Warden's policy restrictions on legal books and time in the library. *Id*. at 165-166, 169-180.

It is well-settled that prisoners have a right of access to the courts. *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491 (1977). However, in pleading such a claim, a plaintiff must allege an "actual injury" and official conduct that is more than mere negligence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005); *Gibbs v. Hopkins*, 10 F.3d 373, 379 (6th Cir. 1993). "Actual injury" can be demonstrated by "the late filing of a court document or the dismissal of an otherwise

14

meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Additionally, the underlying action cannot be frivolous. *Lewis v. Casey*, 518 U.S. 343, 353 (1996). Thus, "the underlying cause of action ... is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353, n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Defendants are entitled to summary judgment on Plaintiff's access-to-court claims for several reasons. As an initial matter, the only non-frivolous underlying claim that Plaintiff identifies as being prejudiced by Defendants' conduct is his criminal appellate proceedings. However, access-to-courts claims predicated on a challenge to a criminal conviction are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Sampson v. Garrett*, 917 F.3d 880, 881–82 (6th Cir. 2019) (access-to-courts claim that necessarily relies on invalidity of underlying criminal conviction is barred by *Heck*). If Plaintiff wishes to attack the validity of his criminal conviction, he must do so via proceedings in *habeas corpus. Id.*

Additionally, to the extent that Plaintiff alleges that Defendants interfered with a non-frivolous underlying claim other than his criminal appellate proceedings, he has failed to specifically identify the type of legal proceedings he had pending in the courts. Here, Plaintiff does not clearly identify an underlying claim other than his criminal appellate proceeding that was frustrated by the confiscation of his legal materials or limited access to the law library. As such, he does not have standing to bring and access-to-courts claim as the undersigned has no way of assessing whether the underlying claim is frivolous. *See e.g.*, *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) ("[T]he predicate claim [must] be described well enough to apply the

'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope."); *Hadix v. Johnson*, 182 F.3d 400, 405-406 (6th Cir. 1999) ("only prisoners with non-frivolous underlying claims can have standing to litigate an access-to-courts action.") (citation omitted).

Finally, Plaintiff has failed to demonstrate that he has suffered an actual injury sufficient to state a viable access-to-courts claim. Instead, he identifies a number of things he "would have" done or issues he "would have" raised in his criminal case had his legal boxes not been confiscated and his library time not been limited. (Doc. #4, *PageID* #s 165-66, 169-79). Thus, in addition to being barred by *Heck*, such hypothetical injuries are insufficient to establish an injury in fact and, thus, necessitate a finding that Defendants be granted summary judgment.

Accordingly, the undersigned **RECOMMENDS** that Defendant's motion for summary judgment on Plaintiff's access-to-courts claims be **GRANTED** and Plaintiff's motion for summary judgment on these claims be **DENIED**.

### D.   Strip Search Claims Under the Fourth and Eighth Amendment Clams

Plaintiff also moves for summary judgment on his claims that the strip search conducted after the RIB hearing on April 18, 2019 constituted an illegal search and seizure and was cruel and unusual punishment, thus violating the Fourth and Eighth Amendments, respectively. (Doc. #83, *PageID* #s 1276, 1285-88).  In response, Defendants contend that Plaintiff's claims fail to state a claim for which relief can be granted and should, therefore, be dismissed. (Doc. #93, *PageID* #s 1509-10).

The Fourth Amendment to the United States Constitution protects individuals "against unreasonable searches and seizures." U.S. Const. Amend. IV. However, in a prison environment, an inmate's right to privacy is greatly diminished because prison officials must be afforded

discretion on how they ensure the safety of inmates, staff, and the general public. *Wilkinson v. Austin*, 545 U.S. 209, 227 (2005). Thus, to satisfy Fourth Amendment concerns, searches "must be conducted in a reasonable manner." *Bell v. Wolfish*, 441 U.S. 520, 560 (1979).  A search conducted in an abusive fashion "cannot be condoned." *Id.*  The Sixth Circuit has recognized that any type of "strip search"[3] is far more intrusive than a mere cell search or other "pat-down" body search. *See Stoudemire v. Michigan Dept. of Corrections*, 705 F.3d 560, 572-573 (6th Cir. 2013).

In considering whether a particular search is reasonable, courts balance the prison's need for the search with the "invasion of personal rights that the search entails." *Salem v. Michigan Dep't of Corr.*, 643 F. App'x 526, 530 (6th Cir. 2016) (quotation marks and citations omitted). Specifically, courts "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted, while also examining obvious, easy alternatives that accommodate the inmate's privacy interests at little cost to valid penological objectives." *Id.* (quotation marks and citations omitted).  Notably, "'detect[ing] and deter[ing] the possession of contraband'" is a legitimate penological objective. *Stoudemire*, 705 F.3d at 573 (quoting *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington,* 132 S. Ct. 11510, 1517 (2012)). Thus, in the absence of evidence to the contrary, courts "must assume that a search of a prisoner is initiated in an effort to detect and deter contraband." *Id.*

In this case, Plaintiff alleges that he was taken from the RIB proceeding and put in a holding cell where he was stripped of his clothes and legal papers and "made to bend over and lift and

---

[3]The term "strip search" is often used as an "umbrella term" that encompasses a variety of behaviors, ranging from the conduct described in *Stoudemire* (stripping to underwear), to a visual inspection of a fully naked individual without scrutiny of body cavities, to a visual body-cavity search which may include inspection of anal and genital areas. The most invasive type of "strip search" would be a manual body-cavity search, involving "some degree of touching or probing of body cavities." *Parkell v. Danberg*, 833 F.3d 313, 327 (3rd Cir. 2016).

spread private parts for the officers to examine for contraband[.]" (Doc. #4, *PageID* #154). In response, Defendants do not deny that the strip search occurred but maintain that a search following a finding of contraband is routine LOCI policy. (Doc. #93, *PageID* #1510) (citing Doc. #83-14, *PageID* #1366).

Recognizing that a strip search is inherently intrusive, the undersigned nonetheless points out that Plaintiff has failed to allege any facts suggesting that the search of his person was conducted in an overly intrusive manner or in a place where he was overly exposed to public view. *Contrast Stoudemire*, 705 F.3d at 575 (double amputee female inmate stated claim for "humiliating strip search in full view of several (or perhaps many) others"); *see also Salem v. Mich. Dept. of Corrections*, 643 Fed. Appx. 526 (6th Cir. 2016) (defendant not entitled to qualified immunity where strip search of female inmates required them to sit on an unwashed chair wet with bodily fluids from other prisoners and spread their labia in full public view of others, without a legitimate penological justification for public and unsanitary conditions). Instead, Plaintiff alleges in a conclusory fashion that "this search was a[n] illegal search and seizure[]" and that "[n]othing of contraband was found." (Doc. #4, *PageID* #154). Finally, Plaintiff's claim that this search was unreasonable is particularly without merit given his acknowledgement that the prison officials conducted the search in an effort to detect contraband following a RIB proceeding where Plaintiff was found guilty of possessing STG contraband. Construing all the facts in Plaintiff's favor, the undersigned finds that Plaintiff's allegations are insufficient to state a claim under the Fourth Amendment, let alone compel summary judgment in his favor.

Plaintiff's strip-search claim similarly fails under the Eighth Amendment. In contrast to the Fourth Amendment, which assesses whether the search is objectively unreasonable, a search is only considered to violate the Eighth Amendment if it constitutes "cruel and unusual punishment,"

meaning that the official conducting the search acted "with a sufficiently culpable state of mind."

*Wilson v. Seiter*, 501 U.S. 294, 300 (1991). As one court explained:

> The Fourth and Eighth Amendments have different roles to play with respect to bodily searches and protect different categories of constitutional rights. The Eighth Amendment safeguards prisoners against the use of searches that correctional officers subjectively intend as a form of punishment.

*Henry v. Hulett*, 969 F.3d 769, 781 (7th Cir. 2020) (en banc) (internal citation omitted).

Thus, in order to prevail on an Eighth Amendment claim against an official, a plaintiff must allege that "the official acted with deliberate indifference to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (internal quotation marks and quotations omitted). Deliberate indifference, in turn, requires a "state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

In its responsive memorandum, Defendant argues that Plaintiff is not entitled to summary judgment because "Plaintiff has offered no alternative set of facts which would justify the finding that Defendants violated the Eighth Amendment in engaging in a routine strip search of Plaintiff after he was found to have contraband." (Doc. 93, *PageID* #1510). Defendants' argument is well-taken. In this case, Plaintiff has failed to allege the names of the corrections officers performing the search, let alone facts suggesting that they acted with a sufficiently culpable state of mind. Thus, viewing the record as a whole, a rational trier of fact could not conclude that Defendants acted with the requisite intent when performing a routine strip search. Consequently, Plaintiff's request for summary judgment on this issue should be denied. Further, Plaintiff's failure to allege facts sufficient to state a claim under the Eighth Amendment leads the undersigned to also recommend dismissal of this claim.

Therefore, the undersigned **RECOMMENDS** that the Court **DENY** Plaintiff's request for summary judgment on his strip-search claims under the Fourth and Eighth Amendment and further **DISMISS** the claim for failure to state a claim upon which relief may be granted.

### E.    Thirteenth Amendment

Plaintiff also moves for summary judgment on his claim under the Thirteenth Amendment. (Doc. #83, *PageID* #1284).  In his Complaint, Plaintiff alleges that the Defendants violated the Thirteenth Amendment's prohibition against slavery and involuntary servitude when he was sentenced to 90 days of confinement in LPH. (Doc. #4, *PageID* #177).  The Thirteenth Amendment of the United States Constitution provides:

> Neither slavery nor involuntary servitude except as a punishment for crime, whereof the party shall have been duly convicted, shall exist within the United States, nor any place subject to their jurisdiction.

Here, the undisputed evidence establishes that Plaintiff's confinement in prison occurred as the result of his state court conviction and that his confinement in LPH occurred as the result of an RIB proceeding finding him guilty of Rule 17. In both instances, Plaintiff was duly convicted. Moreover, Plaintiff fails to allege facts showing that he was forced into anything constituting involuntary servitude.  Thus, pursuant to the express language of the Thirteenth Amendment, Plaintiff's claim fails as a matter of law.

Therefore, because Plaintiff has failed not only to establish that he is entitled to judgment as a matter of law but has also failed to allege a claim for which relief can be granted, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment on his Thirteenth Amendment claim be **DENIED** and this claim be **DISMISSED**.

### F. Qualified Immunity

Defendants also contend that they are entitled to summary judgment on the issue of qualified immunity for the claims Plaintiff asserts against them in their individual capacities. (Doc. #82, *PageID* #s 1225-26). Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). In so doing, "qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808 (2009).

A governmental official is entitled to immunity if the facts alleged do not make out a violation of a constitutional right, or if the alleged constitutional right was not clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009). Additionally, while a defendant bears the initial burden of pleading the defense of qualified immunity, it is the plaintiff who "bears the ultimate burden of proof to show that [government officials] are not entitled to qualified immunity." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012) (*quoting Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005)).

Defendants maintain that they are entitled to qualified immunity on Plaintiff's claims. (Doc. #82, *PageID* #1225). Thus, the burden shifts to Plaintiff to establish that Defendants are not entitled to this defense. However, as explained above, Plaintiff has failed to demonstrate that his constitutional rights have been violated, even when viewed in the light most favorable to him. As

such, Plaintiff is unable to carry his burden of to show that Defendants are not entitled to qualified immunity.

Accordingly, the undersigned **RECOMMENDS** that the Court find that Defendants are immune from Plaintiff's claims and are entitled to summary judgment in their favor as a matter of law.

### G.     Plaintiff's State Law Claims

Finally, Plaintiff moves for summary judgment on his state law claims, including breach of contract, theft, larceny, extortion, and defamation. (Doc. #83, *PageID* #s 1269-82). However, for the reasons explained above, Plaintiff has failed to establish that any of his constitutional rights have been violated. Accordingly, if the Court accepts the foregoing recommendations, the undersigned **RECOMMENDS** that the Court also decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *Harper v. AutoAlliance Int'l, Inc.,* 392 F.3d 195, 210 (6th Cir.2004) (although the exercise of supplemental jurisdiction under 28 U.S.C. § 1367 is a matter of discretion, when a court dismisses all federal claims before trial, it generally should dismiss the state law claims as well); *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 53 (2d Cir.1986) ("federal courts, absent exceptional circumstances, should abstain from exercising [supplemental] jurisdiction when federal claims in a case can be disposed of by summary judgment.").

## IV.     CONCLUSION

For all the foregoing reasons, the undersigned **RECOMMENDS** that:

1.     Defendants' Motion for Summary Judgment (Doc. #82) be **GRANTED** in its entirety**.**

2.     Plaintiff's Motion for Summary Judgment (Doc. #83) be **DENIED** on all of Plaintiff's claims arising under the United States Constitution;

3.      The Court decline to exercise supplemental jurisdiction over
        Plaintiff's remaining state law claims; and

4.      This case be **TERMINATED** on the Court's docket.


July 15, 2022                               *s/Peter B. Silvain, Jr.*
                                            Peter B. Silvain, Jr.
                                            United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).