# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

ANTHONY L. MCKINNEY,                       :  Case No. 2:20-cv-1450
                                           :
      Plaintiff,                        :
                                           :
                                           :  District Judge Michael H. Watson
vs.                                        :  Magistrate Judge Peter B. Silvain, Jr.
                                           :
DENISE PADDOCK, *et al.*,                  :
                                           :
      Defendants.                       :
                                           :

## ORDER

      This matter is before the Court on Plaintiff's "Motion for An Order Compelling Disclosure or Discovery Federal. Rule. Civil Procedure. (a)(3)(B)"("First Motion to Compel") (Doc. #95); Plaintiff's "Motion to Amend and Supplement and Order Compelling Disclosure or Discovery Federal. Rule. Civil Procedure. (a)(3)(B)" ("Second Motion to Compel") (Doc. #97); Defendants' memorandum in opposition to these motions to compel (Doc. #107); Plaintiff's "Motion for an Order Compelling Disclosure, Discovery Fed R. 34, 36, & 37 Due to Defendants Failure to Properly Respond to Admissions and the Late Turning Over of Admissions [Plaintiff] Request Leave to Issue [Interrogatories]" ("Third Motion to Compel") (Doc. #116); Defendants' memorandum in opposition to this motion to compel (Doc. #118); Plaintiff's "Motion to Strike" (Doc. #117); Defendants' memorandum in opposition to the Motion to Strike (Doc. #119); Plaintiff's reply memorandum in support of both his Third Motion to Compel and Motion to Strike (Doc. #121); "State of Ohio, Interested Party's Motion for a Protective order; in the alternative Motion to Quash Interrogatories Served Upon William Cool, Non Party [Doc. 122]" (Doc. #124); Defendant Shawn Frye's Motion for a Protective Order (Doc. #125); Defendant Ryan Kammer's

Motion for a Protective Order (Doc. #126); Defendant Denise Paddock's Motion for a Protective Order (Doc. #127); Defendant Brian Preston's Motion for a Protective Order (Doc. #128); and Plaintiff's memorandum in opposition to these protective orders (Doc. #129).

## I.    BACKGROUND

On August 24, 2022, District Judge Michael H. Watson recommitted this matter for a ruling on Plaintiff's First Motion to Compel (Doc. #95) and Plaintiff's Second Motion to Compel (Doc. #97). (Doc. #104). As a result, the undersigned issued an Order on August 26, 2022, instructing Defendants to file a response to Plaintiff's motions no later than September 9, 2022. (Doc. #105). Defendants timely filed their response to these motions on September 8, 2022. (Doc. #107).

On October 11, 2022, Plaintiff filed his Third Motion to Compel and Motion to Strike. (Doc. #s 116, 117). Shortly thereafter, Defendants filed their responses to these motions (Doc. #s 118, 119) and Plaintiff filed his reply (Doc. #121).

Then, on November 23, 2022, Plaintiff filed what appear to be five sets of interrogatories directed at non-party William Cool and Defendants Frye, Kammer, Paddock, and Preston. (Doc. #122). In response, Defendants and the State of Ohio filed motions for protective orders, requesting that they be protected from answering Plaintiff's newly filed interrogatories. (Doc. #s 124-28).

As a result of this "flurry of ongoing discovery-related activity," District Judge Watson issued an Opinion and Order striking the pending summary judgment motions (Doc. #s 82, 83, and 110). (Doc. #130). In so doing, District Judge Watson also rejected as moot the undersigned's pending Report and Recommendation (Doc. #96) along with Plaintiff's extension of time to move for summary judgment (Doc. #111). *Id*. District Judge Watson further indicated that the

undersigned would resolve all remaining discovery motions and then establish a new briefing schedule for summary judgment upon the definitive close of discovery. *Id.*

Accordingly, the undersigned will now address the remaining discovery issues.

## II.     LAW & ANALYSIS

### A.     Plaintiff's Requested Discovery

As noted above, Plaintiff has filed three motions to compel, all of which relate to discovery ordered by the undersigned at a discovery conference held on November 12, 2021. (Doc. #s 96, 97, 116).[1]  Federal Rule of Civil Procedure 37 permits a party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided that the motion to compel includes a certification that the movant has, in good faith, conferred or attempted to confer with the party failing to respond to the requests. Fed. R. Civ. P. 37(a)(1). Here, the Court is satisfied that this prerequisite has been satisfied as the discovery at issue concerns that which has been previously ordered by the undersigned.

In Plaintiff's First Motion to Compel, he requests the Court compel Defendants to produce certain documents that were identified during the discovery teleconference held before the undersigned on November 12, 2021. (Doc. #95, *PageID* #s 1526-27).  Specifically, Plaintiff states:

> This court ordered the defendants to turn over discovery evidence of the criminal investigation initiated by the defendants, with the FBI ODRC and other agencies, concerning the documents sent for investigation, and the results of the investigation by these agencies. Also defendants were ordered to turnover admission, that they were sent via mail or clerk as stated in the certificate of service to the defendants. Defendants were ordered to turn over documents relating to sign in sheets in the law library and the officers pass list to demonstrate plaintiffs due process rights. Also defendants were ordered to turn over the name the conduct report is traded under on the stock market and the amount.

*Id*. at 1526.

---

[1] *See* Doc. #120 (Transcript of Proceedings held on November 12, 2021, before Judge Peter B. Silvain, Jr.).

Shortly thereafter, Plaintiff filed his Second Motion to Compel, in which he reiterated his request for these previously identified documents. (Doc. #97, *PageID* #s 1553-54). Additionally, Plaintiff requested that the Court compel Defendants produce "any and all documents that has been reduced to writing, that is withheld in any medium via letters, email, interoffice communication[.]" *Id*. at 1554.

In his Third Motion to Compel, Plaintiff alleges that "[d]iscovery is still outstanding and withheld," and points to Defendants failure to "turn over discovery of the results of the investigation, based on documents confiscated from plaintiff 3/18/19 by defendants and turned over to FBI, ODRC, & State Highway Patrol for [Investigation]." (Doc. #116, *PageID* #2176). Here, Plaintiff points to the discrepancy in statements made by Lori Duckworth, Defendants' prior counsel, at the November 12, 2021 discovery conference and Defendants' current position on this investigation. *Id*. at 276-78. Finally, Plaintiff maintains that Defendants are deficient in producing a list of names of persons conducting the Rules and Infraction Board ("R.I.B.") proceedings, the April 12, 2019 law library sign-in sheet, and the officer pass list from April 10, 11, and 12, 2019. *Id*. at 2179.

In response, Defendants maintain that they have complied with the Court's prior discovery orders and have filed over 500 pages of documents that were produced to Plaintiff to demonstrate this compliance. (Doc. #s 107, 118). Accordingly, the undersigned will address each category of requested discovery in turn.

### 1. Defendants' responses to Plaintiff's "requests for admissions"[2]

Plaintiff contends that Defendants have not complied with the Court's order to produce their responses to his requests for admissions. (Doc. #95, *PageID* #1526; Doc. #97, *PageID*

---

[2] While Plaintiff labels and refers to this discovery as "requests for admissions," he formulates his requests as questions, and so Defendants have reasonably responded to the requests as if they were interrogatories.

#1554). At the time of the November 12, 2021 discovery conference, counsel for Defendants indicated that these responses had already been produced to Plaintiff. (Doc. #120, *PageID* #2296). However, Plaintiff stated that he had not received responses for the six Defendants. *Id*. at 2296-98. As a result, the undersigned ordered Defendants to provide Plaintiff with responses to all the requests for admissions within 60 days. *Id*. at 2299-2300.

On January 7, 2022, Plaintiff filed six separate sets of requests for admissions against Defendants Frye, Paddock, Kammer, Robinson, and Preston, and non-party William Cool, (Doc. #s 74-79), which the Court infers are the six requests for admissions Plaintiff had previously referenced. In response to Plaintiff's request to compel the responses to these admissions, Defendants' current legal counsel acknowledged being unable to determine when the responses were sent to Plaintiff by Defendants' prior legal counsel and, therefore, attached the responses to the memorandum in opposition to Plaintiff's motions to compel. (Doc. #107, *PageID* #1622-23).

Upon review of the record, it appears that, apart from Defendant Robinson, Defendants have filed the responses to these requests for non-party William Cool and all the Defendants. (Doc. #107-1, *PageID* #s 2084-2123). Defendants and Mr. Cool responded with various boilerplate objections but also answered every single request over their objections. *See id*. Upon review, the Court finds that Defendants' and Mr. Cool's responses to these requests are sufficient.

Accordingly, Defendants Frye, Paddock, Kammer, and Preston, and non-party William Cool have satisfied their obligation to respond to Plaintiff's request for admissions. However, Defendants are **ORDERED** to produce the responses to Plaintiff's requests for admissions against Defendant Robinson contained in the record at Doc. #77. Thus, to the extent that Plaintiff's motions to compel ask the Court to compel Defendants to produce Defendant Robinson's

responses to Plaintiff's requests for admissions, Plaintiff's motions (Doc. #s 95, 97) are **GRANTED**.

### 2. *Law library sign-in sheets from April 12, 2019*

In all three motions to compel, Plaintiff claims that Defendants failed to turn over the April 12, 2019 law library sign-in sheets. (Doc. #95, *PageID* #1526; Doc. #97, *PageID* #1554; Doc. #116, *PageID* #2179).  At the discovery conference, Plaintiff explained that he requested the law library sign-in sheets so as to "demonstrate that [he] was in the library at the time because the conduct report did not demonstrate the location, which is [an] important part of the due process violation[.]" (Doc. #120, *PageID* #2269).  As a result, the undersigned found that Plaintiff's request was reasonable and ordered Defendant to produce the library sign-in sheets, provided that information related to inmates other than Plaintiff could be redacted. *Id*. at 2270-71.

In response, Defendants acknowledge that they could not locate a record of when this discovery was previously sent to Plaintiff, so they indicated that redacted library sign-in sheets for November 2018 through April 28, 2019, which would encompass the April 12, 2019 date that Plaintiff requested, were sent to Plaintiff as part of their response. (Doc. #107, *PageID* #1622; Doc. #118, *PageID* #2195).

Upon review of the record, it appears that Defendants did produce law library sign-in sheets for certain dates between November 2018 and April 28, 2019.  (Doc. #107-1, *PageID* #s 2036-83).  However, while there are sign-in sheets with dates falling within this five-month period, the dates produced are sporadic and not comprehensive.  *See id*.  Significantly, the production does not contain the sign-in sheets from April 12, 2019. *See id*.

Based on the foregoing, Defendants are **ORDERED** to produce the redacted law library sign-in sheets from April 12, 2019.  If Defendants are unable to locate the sign-in sheets from April

12, 2019, then Defendants must affirmatively state why they are unable to produce the documents and what steps they took to locate the documents. Thus, to the extent that Plaintiff's motions to compel ask the Court to compel Defendants to produce the redacted law library sheets from April 12, 2019, Plaintiff's motions (Doc. #s 95, 97, 116) are **GRANTED**.

3. *Officers' pass lists*

Plaintiff has also repeatedly requested the officers' pass lists in his motions to compel. In his initial Request for Production of Documents, Plaintiff requested "[t]he pass list/[t]he sign in list to receive a pass from the block officer, 4-16-19, 4-15-19, 4-17-19, 4-18-19." (Doc. #41-5, *PageID* #601). At the discovery conference, Plaintiff explained that that "pass from the block officer goes toward the due process to show that [Plaintiff] did not receive a pass to the R.I.B. Board room. That they did not give [him] 24-hour notice to prepare a defense or to pack [his] property up or anything to prepare –to gather witnesses—so that's what that goes toward." (Doc. #120, *PageID* #2269). The undersigned found that this request was reasonable and subsequently ordered Defendant to produce the officer pass lists for April 15, 2019 through April 18, 2019, provided that information related to inmates other than Plaintiff could be redacted. *Id.* at 2270-71.

In his first two motions to compel, Plaintiff simply requested that Defendants be compelled to produce the officers' pass lists without reference to specific dates. (Doc. #95, *PageID* #1526; Doc. #97, *PageID* #1554). In his Third Motion to Compel, Plaintiff requested that the Court compel Defendants to produce the officers' pass list for April 10, 11 and 12, 2019. (Doc. #116, *PageID* #2179). In response, Defendants point out that they were only ordered to produce the officers' pass lists for April 15, 2019 through April 18, 2019 as opposed to April 10, 2019 through April 12, 2019. (Doc. #118, *PageID* #2195).

Upon review of the record, it appears that Defendants did, in fact, produce the pass designation reports for April 15, 2019 through April 18, 2018, copies of which were attached to their memorandum in opposition to Plaintiff's motions to compel. (Doc. #107-1, *PageID* #s 1912-2035). Accordingly, the Court finds that Defendants complied with the discovery conference order on this issue, and Plaintiff has not presented sufficient reasons for requesting pass designation lists for different dates than he previously requested. Thus, to the extent that Plaintiff's motions to compel ask the Court to compel Defendants to produce the officers' pass lists for April 10, 2019 through April 12, 2019, Plaintiff's motions (Doc. #s 95, 97, 116) are **DENIED**.

4. *Name of conduct report that is traded on the stock market and amount*

Plaintiff also requested that the Defendants produce documentation regarding the name under which conduct reports are allegedly traded on the stock market as well as the amount they are worth. (Doc. #95, *PageID* #1526; Doc. #97, *PageID* #1554). At the November 12, 2021 discovery conference, the undersigned found that the Defendants had sufficiently responded to Plaintiff's request in claiming that, to their knowledge, "conduct reports are not traded on the stock market and have no monetary value[,]" but that "institutions are permitted to charge $0.05 per page to cover the cost of copying documents." (Doc. #120, *PageID* #2242). Nonetheless, the Court ordered Defendants to produce documents that "referenced that $0.05 per page for copying" as well as "any documents which would in some way reference the fact that conduct reports have a financial value[.]" *Id.*

Plaintiff, however, has only requested that the Court compel Defendants "to turn over the name of the conduct report [that] is traded under the stock market and the amount." (Doc. #95, *PageID* #1526; Doc. #97, *PageID* #1554). Having previously found that Defendants had sufficiently responded to this request, the Court reiterates that Defendant has no outstanding

8

discovery obligations on this issue. Therefore, to the extent that Plaintiff requests Defendants produce documentation regarding the name and amount that conduct reports are allegedly traded on the stock market, Plaintiff's motions (Doc. #s 95, 97) are **DENIED**.

### 5. *Any and all documents that have been reduced to writing*

In his Second Motion to Compel, Plaintiff reiterated the outstanding discovery identified in his First Motion to Compel and requested that the Court compel Defendants produce "any and all documents that has been reduced to writing, that is withheld in any medium via letters, email, interoffice communication[.]" (Doc. #97, *PageID* #1554).

As outlined in this Order, the Court has addressed each discovery request that Plaintiff has specifically articulated as being deficient. However, Plaintiff's generic request that Defendants produce "any and all documents that has been reduced to writing, that is withheld in any medium via letters, email, interoffice communication" fails to sufficiently identify the alleged deficiencies in the Defendants' production to allow the undersigned to conduct a meaningful review. *See Ridenour v. Ohio Dep't of Rehab. & Correction*, No. 2:10- CV-00493, 2013 WL 80321, at *1 (S.D. Ohio Jan. 7, 2013), *on reconsideration*, No. 2:10-CV-00493, 2013 WL 2243749 (S.D. Ohio May 21, 2013). As a result, the undersigned cannot evaluate the adequacy or inadequacy of Plaintiff's discovery requests or Defendants' responses. *See Peterson v. Kramer*, No. 3:13-CV-187, 2015 WL 1954615, at *3 (S.D. Ohio Apr. 29, 2015) ("The record is simply too inadequate to make a meaningful ruling on the motion."). Therefore, to the extent that Plaintiff's motions request the Court to issue a *carte blanche* order to compel, his motions (Doc. #s 95, 97) are **DENIED**.

### 6. *Documents containing names of persons conducting the R.I.B. proceedings*

In his Third Motion to Compel, Plaintiff states that Defendants have failed to provide the names of the persons presiding over his R.I.B. proceedings in April 2019. (Doc. #116, *PageID*

#2179). In response, Defendants point out that this information is already in Plaintiff's possession as the April 2019 R.I.B. hearing documentation was attached to his Complaint. (Doc. #118, *PageID* #2194) (citing Doc. #4, *PageID* #s 190-96).

This issue was also addressed at the November 12, 2021 discovery conference. At the conference, the undersigned advised Plaintiff that his request was better suited as an interrogatory, but since Plaintiff framed the request as a production of documents, the Court would interpret it as a request for documents that would reflect the names of the individuals on the R.I.B. (Doc. #120, *PageID* #s 2260-61). The undersigned further noted that the Defendants produced R.I.B. documents, affixed with Bates-Stamp numbers 1 through 4, which purported to contain signatures of the presiding officers and directed Plaintiff to review those documents for the names of the officers he requested. *Id*. at 2261. In his reply memorandum, Plaintiff notes that he cannot read the names of the signatures. (Doc. #121, *PageID* #2315).

Upon review of the record, it appears that Plaintiff does have the documents from the R.I.B. proceeding as they were attached as an exhibit to his own Complaint. (Doc. #4, *PageID* #s 190-96). Nonetheless, the Court agrees with Plaintiff that not all the signatures on these documents are legible.

Accordingly, Plaintiff's Third Motion to Compel (Doc. #116) is **GRANTED** to the extent that Defendants are **ORDERED** to produce documentation with the typewritten names of the officers presiding over Plaintiff's April 2019 R.I.B. hearing.

       7.   *Evidence of the criminal investigation by the Defendants with the FBI, ODRC, and other agencies and results of that investigation*

The final category of evidence for which Plaintiff has most adamantly pursued in each of his motions to compel is the evidence related to a criminal investigation by the Defendants with the FBI, ODRC, and/or other entities and the results of that investigation. (Doc. #95, *PageID*

#1526; Doc. #97, *PageID* #1554; Doc. #116, *PageID* #s 2176-78). Plaintiff has requested this discovery as a result of statements made by Lori Duckworth, Defendants' prior counsel, at the November 12, 2021 discovery conference that Plaintiff was "exonerated" following an investigation by the FBI. (Doc. #116, *PageID* #2177). In September 2022, however, Ms. Duckworth accepted employment outside the Ohio Attorney General's Office and was removed as Defendants' counsel in this case. (*See* Doc. #114; Notation Order dated Sept. 27, 2022).

In response, Defendants maintain that they are unable to produce such documents as they do not exist. (Doc. #107; *PageID* #1622; Doc. #107-1; *PageID* #1902; Doc. #118, *PageID* #s 2193-94; Doc. #119, *PageID* #s 2198-99). To support their position, Defendants submitted a "Declaration of [Defendant] Ryan Kammer," in which he attests that "[t]he investigation of [Plaintiff] was conducted internally. Nothing regarding the investigation was forwarded to the FBI or BCI regarding potential sovereign citizen activities by Plaintiff." (Doc. #107-1, *PageID* #1902). Defendants also point to the emails and a conduct report related to the internal investigation of Plaintiff's security threat group activities, the Security Threat Group Activity Notice, and the decision of the R.I.B., all of which support a finding that an internal investigation was conducted into Plaintiff's security threat group activities and that he was, internally, found guilty of a Rule 17 violation. (*See* Doc. #107-1, *PageID* #s 1899-1901; 1903-06; Doc. #4, *PageID* #s 187-97).

Significantly, neither this evidence nor Defendant Kammer's Declaration addresses why Ms. Duckworth would state that Plaintiff's materials had been sent to the FBI and that he was "exonerated" of a rules' infraction violation when all the other evidence of record points otherwise. On this point, Defendants' current legal counsel simply states: "Regarding the unsworn statements of Attorney Lori Duckworth …, Defendants can only represent that Attorney Duckworth was mistaken when she informed the Court that there was an investigation outside of ODRC regarding

Plaintiff's actions on March 18, 2019 and the documents which were seized." (Doc. #118, *PageID* #2193).

Such a response fails to recognize the circumstances under which Ms. Duckworth made these representations to the Court. That is, the potential existence of an outside investigation was not a fact that originated with Plaintiff or the Court but, instead, with Ms. Duckworth. Indeed, it was Ms. Duckworth who informed Plaintiff and the Court that Plaintiff's documents were sent outside the prison for analysis. Further, it was Ms. Duckworth who argued that the discovery was not relevant because Plaintiff was found to *not* be a member of a security threat group—a statement that, again, is undermined by the evidence that has been produced on this point. To be sure, the colloquy between the Court and Ms. Duckworth on this issue is excerpted below:

THE COURT: However, with regard to any allegations that the Government would make, and his allegation that defamed – as he stated – he was a gang member, potentially if the Government – or the Defendants in this case are asserting the fact that he was, in fact, a gang member, they're going to use that as defense – as truth of a defense to a defamation suit, if that is one of the defenses that the Defendants' intend to use, then they should produce any and all documents which would reflect whether or not the [Plaintiff] is considered part of a gang.

Any questions about that one, Mr. McKinney?

MR. McKINNEY: Yes, yes, Your Honor. I, I agree with you, and really what I want is documents that, that they have alleged that are Sovereign Citizens, which is a defamatory name or any, any – any type of gang bang considering that defamatory name.

I was just trying – it hasn't been to[o] long since they start using that, so I was asking for documentation toward that and anything they would use against me as far as that being in the computer and stuff like that as far as the institution, DCR, or any Federal files or anything like that, but, yes, Your Honor.

THE COURT:    All right. So we refine that to documents regarding your being a Sovereign Citizen or a gang member? Go ahead, Ms. Duckworth.

…

MS. DUCKWORTH:    … I think the catalyst for this case was Mr. McKinney was with someone. They were doing things in the law library. The law librarian saw things that triggered her training. She thought that – she was slightly alarmed, and she thought that she should take this for investigation, which is – which is completely, you know, standard in a prison, so she sent them somewhere, had, I think, the F.B.I. and also the security threat group experts look at them.

Mr. McKinney was ultimately not charged with that, but it was simply an investigation, so we're not – we're not trying to rely on the fact that he was a gang member.

It was a standard prison procedure where there's a suspicion of a security threat, that it was investigated, and it was resolved.

…

THE COURT:    Any documents which would be where the institution and the Defendants in this case discussed or any documents showing the nature of the investigation with regard to whether or not he was a Sovereign citizen, whether or not he was a gang member would be specifically relevant to his suit and wouldn't be unduly burdensome because I'm not requiring it of any other individual, only of the Plaintiff in this case.

And I'm going to require that you provide any specific documents where you either assert that the Plaintiff showed that he was a member of these groups or caused the investigation, and any investigation reports or results with regard to seeing whether or not […] the Plaintiff in this case was actually a gang member or member of Sovereign Citizens, that would fit within his allegations in his suit, and, therefore, it is relevant to it, and I find it's not overly burdensome; and unless you can exert some sort of specific privilege why it should not be provided, I don't think it fits any of the ones that I can think of, so –

…

MS. DUCKWORTH:  --can I clarify what you're – what you're asking because he had some material in his things that he was copying or something in the law library. It was identified as –by the law librarian in good faith as a potential threat and sent away to the F.B.I. and the investigators. They concluded that he was not a risk, so I'm struggling to find –

…

But I'm – I mean, I've given what – what I have. This is not typically something we would turn over when the inmate was exonerated from whatever the rules of infraction was.

…

THE COURT:  Ms. Duckworth, that would be particularly relevant to the fact that he was, in fact, found not to be responsible for this particular –

…

MS. DUCKWORTH: [That's] all – in discovery that's all been released to them.

THE COURT:  I'm also fairly familiar with the F.B.I.'s process and documents are required in filing something to get the F.B.I. to examine whether or not he fit that criteria. Have those documents be[en] turned over to the Plaintiff in the case?

MR. McKINNEY:  No, Your Honor. They have not, Your Honor.

THE COURT:  I'm going to require that those documents, that you initiated – that the librarian initiate the investigation of whether or not these were Sovereign Citizen documents or if – and/or whether he was a gang member that – those materials be turned over, so I don't find that it's unduly burdensome; and I – I think it's probative to his claim – to his colorable claim in this matter, so those will be turned over.

(Doc. #120, *PageID* #s 2246-50).

Based on the foregoing, it is clear that Ms. Duckworth's understanding of the investigation(s) surrounding Plaintiff's security threat group status was very different from what the evidence now purports to show. While Ms. Duckworth's understanding may have been "mistaken," Defendants' current legal counsel has not sufficiently demonstrated to the Court the

steps they took to ensure that their former colleague was mistaken and that there were no external investigations of Plaintiff and the March 18, 2019 incident.

Accordingly, Defendants' legal counsel are hereby **ORDERED** to file an affidavit **no later than March 24, 2023**, outlining (1) the steps they took to confirm that the FBI or any entity outside of ODRC was not involved in the investigation of Plaintiff's security threat group status; (2) the circumstances, if any, under which the FBI or any entity outside of ODRC would become involved with a security threat group analysis; (3) the efforts that they and Ms. Duckworth undertook to ensure that this case was properly transitioned from Ms. Duckworth before Ms. Duckworth withdrew as counsel in September 2022; and (4) any attempts, including the use of non-party subpoenas, to contact Ms. Duckworth and to resolve any factual misrepresentations that have been made by the Ohio Attorney General's Office to this Court.

### B. Plaintiff's Motion to Strike

On October 11, 2022, Plaintiff filed a Motion to Strike, requesting that the Court strike Defendants' summary of the November 12, 2021 discovery conference as well as the documents that were produced as part of their memorandum in opposition to Plaintiff's motions to compel. (Doc. #117).

According to Plaintiff, the summary provided by Defendants is "not accurate enough to reflect what was stated in the discovery conference" and should not be relied upon to determine what was ordered. *Id*. at 2182-83. Plaintiff also alleges that he was "compelled to file both of his discovery disc[s] with the court[]" and so he is unable to specifically identify the inaccuracies in Defendants' summary. *Id*.

Plaintiff also objects to the documents produced by Defendants in response to his motions to compel, arguing that the discovery is late and that "Defendants may not add this evidence

because discovery for [D]efendants [is] over." (Doc. #117, *PageID* #2186). Plaintiff contends that these documents were not previously produced, and that Defendants are trying to add additional documents to the record that Plaintiff did not request. *Id*. at 2186-87. Plaintiff also specifically objects to the documents identified as being the "Documents Confiscated from McKinney," (Doc. #107-1, *PageID* #s 1633-71), stating that "these documents must be stricken from the record, as these are not the documents taken by [Defendant] Frye. [Plaintiff] never posse[sse]d these documents[.]" *Id*. at 2185.

"The Federal Rules of Civil Procedure do not provide for a motion to strike documents other than pleadings." *Cincinnati Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*., 377 F. Supp. 3d 859, 864 (S.D. Ohio 2019); *see also* Fed. R. Civ. P. 12(f) (limited to striking pleadings or portions of pleadings). However, the Court has the inherent authority to control its docket, which includes the authority to strike documents or portions of documents. *See id*. (citing *Anthony v. BTR Auto. Sealing Sys*., 339 F.3d 506, 516 (6th Cir. 2003); *Getachew v. Cent. Ohio Transit Auth*., No. 2:11-cv-860, 2013 WL 819733, at *2 (S.D. Ohio Mar. 5, 2013)).

Under these circumstances, the Court need not exercise such authority. With regard to Plaintiff's request that Defendants' summary of the November 12, 2021 discovery conference be stricken, the undersigned finds such a remedy to be unnecessary. As set forth above, the Court has relied solely on its own discovery orders and the official transcript of the discovery conference in determining what was previously ordered at the November 12, 2021 discovery conference. In other words, the Court did not rely on the Defendants' summary of the proceeding and, therefore, finds no reason to strike it from the record.

Similarly, there is no reasonable basis for striking the documents that Defendants produced in response to Plaintiff's motions to compel. In fact, it was the production of these documents that

allowed the Court to review what had been produced to Plaintiff and to assess what outstanding discovery Plaintiff is entitled. Simply put, Plaintiff cannot, on one hand, request that the Court compel outstanding documents from Defendants and, on the other, request that the Court strike the very documents Defendant used to demonstrate compliance with Plaintiff's former requests. While Plaintiff is entitled to disagree with the content or the meaning of the documents produced by Defendants, he is not entitled to have the documents stricken from the record.

For these reasons, Plaintiff's Motion to Strike (Doc. #117) is **DENIED**.

### C. Motions for Protective Orders

On November 23, 2022, Plaintiff filed a document entitled "Interrogatories for William Cool," in which Plaintiff references motions to compel discovery and protective orders. (Doc. #122). He then proceeds to state that "Mr. Cool failed to properly respond" to certain "request[s] for admissions" and follows the statement with a new question directed at Mr. Cool. *Id*. at 2323-27. Attached to this document are "Interrogatories" for Defendants Frye, Kammer, Paddock, and Preston, which follow the same format as the "Interrogatories for William Cool." *Id*. at 2329-53.

In response, Defendants, as well as the State of Ohio as an interested party on behalf of William Cool, filed motions for protective orders, requesting that they be protected from responding to these interrogatories. (Doc. #s 124-128). In their motions, the State of Ohio and Defendants point out that they have already responded to Plaintiff's interrogatories, albeit identified by Plaintiff as "Requests for Admissions,"[3] and that the current sets of interrogatories filed with the Court are not only improper, but also requested merely for the purpose of harassing or embarrassing Defendants and Mr. Cool. *Id.*

---

[3] *See* fn. 2.

This Court has broad discretion over the discovery process, including the scope of discovery. *Pittman v. Experian Info. Sol., Inc.,* 901 F.3d 619, 642 (6th Cir. 2018); *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). Unless otherwise ordered, the scope of discovery is that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In this regard, "[r]elevance is construed very broadly for discovery purposes." *Doe v. Ohio State Univ.*, 2018 WL 1373868 at *2 (S.D. Ohio Mar. 19, 2018) (citations omitted). The concept of relevance, however, is not unlimited. *Averett v. Honda of Am. Mfg., Inc.*, 2009 WL 799638 at *2 (S.D. Ohio March 24, 2009). While a plaintiff should "not be denied access to information necessary to establish her claim," a plaintiff may not be "permitted to 'go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016) (quoting *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).

As a result, the Federal Rules of Civil Procedure provides the Court with the ability to issue protective orders as a means of limiting the scope of discovery. Specifically, the Rules provide that, "for good cause shown," the Court can issue a protective order to protect a party or person "from annoyance, embarrassment, oppression, or undue burden or expense." Here, "[g]ood cause exists if 'specific prejudice or harm will result' from the absence of a protective order." *In re Ohio Execution Protocol Litig.*, 845 F.3d at 236 (internal citation omitted). "The burden of establishing good cause for a protective order rests with the movant." *Nix v. Sword*, 11 Fed. App'x 498, 500 (6th Cir. 2001) (citation omitted).

As an initial matter, the undersigned notes that Plaintiff's filing of these interrogatories is in direct contravention of the instruction given to him at the November 12, 2021 discovery

conference, where he was informed that the extension of time for discovery was for responding to discovery and that he would not be permitted to propound new requests. (Doc. #120, *PageID* #2298).  Additionally, as previously discussed, while it is unclear whether Defendants timely responded to Plaintiff's admissions/interrogatories, it is clear that Mr. Cool and Defendants provided their responses at least as of September 2022, when they were filed with the Court. (*See* Doc. #107-1, *PageID* #s 2084-2132).[4]

Further, in comparing Plaintiff's previously filed requests for admissions with the newly filed interrogatories, it appears that the interrogatories are either identical or substantially similar to the requests already filed, thus improperly seeking evidence that has already been produced by Mr. Cool and Defendants. (*Compare* Doc. #s 74-76, 78, 79 *with* Doc. #122, *PageID* #s 2322-63). For example, in his January 2022 requests for admissions against Defendant Frye, Plaintiff's third request provided: "Mr. Frye when McKinney was delivered to you by the escort, did you label the Documents In your Contra Band Slip (Sovereign Citizen Document) based on Ms. Paddocks findings[?]" (Doc. #74, *PageID* #1175) (errors in original).  This request is nearly identical to the first interrogatory posed by Plaintiff in his November 2022 filing: "Mr. Frye when McKinney was delivered to you by the escort, did you label the documents in your contraband slip as (sovereign Citizen Documents) based on Paddocks findings[?]" (Doc. #122-1, *PageID* #2331) (errors in original). Again, as discussed above in relation to Plaintiff's motions to compel, the undersigned has found that Defendants' September 2022 responses to these requests are sufficient. Accordingly, the Court will not entertain Plaintiff's attempts to obtain further duplicative responses.

---

[4] The Court recognizes that Defendants have not produced the responses to Plaintiff's requests against Defendant Robinson (Doc. #77).  Defendant Robinson's obligation to respond to Plaintiff's requests (Doc. #77) remains unaffected by the Court's findings related to the other Defendants' motions for protective orders (Doc. #s 124-128).

Finally, to the extent that Plaintiff has varied his interrogatories from his previously filed requests for admissions, these changes are plainly inappropriate and outside the scope of relevant discovery. For instance, Plaintiff's third interrogatory to Defendant Frye states: "Mr Frye have you ever been disciplined for inappropriate behavior, rape, sexual harasment against Denise Paddock or other wemon employees or men before 3/18/19 or after[?]" (Doc. #122-1, *PageID* #2332) (errors in original). Plaintiff posed a similar iteration of this question to Defendant Kammer. (Doc. #122-2, *PageID* #2338). These interrogatories have no relevance to Plaintiff's claims and serve no purpose other than to harass Defendants.

In sum, having reviewed all the interrogatories at issue, the Court finds that Plaintiff's requests are duplicative, outside the scope of discovery, and/or intended to harass or embarrass Defendants and Mr. Cool. Federal Rule of Civil Procedure 26(c)(1) was designed for situations just as this, where the Court must step in to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." Accordingly, the motions for protective orders (Doc. #s 124-128) filed by the State of Ohio and Defendants are hereby **GRANTED**.

### III.      CONCLUSION

For the foregoing reasons, Defendants must provide Plaintiff with the discovery outlined above no later than **March 24, 2023**. Further, with regard to Ms. Duckworth's prior statements regarding an external investigation of Plaintiff's security threat group status, Defendants' legal counsel must file an affidavit no later than **March 24, 2023**, outlining (1) the steps they took to confirm that the FBI or any entity outside of ODRC was not involved in the investigation of Plaintiff's security threat group status; (2) the circumstances, if any, under which the FBI or any entity outside of ODRC would become involved with a security threat group analysis; (3) the efforts that they and Ms. Duckworth undertook to ensure that this case was properly transitioned

from Ms. Duckworth before Ms. Duckworth withdrew as counsel in September 2022; and (4) any attempts, including the use of non-party subpoenas, to contact Ms. Duckworth and to resolve any factual misrepresentations that have been made by the Ohio Attorney General's Office to this Court.

Upon his review of this compelled discovery and affidavit, Plaintiff will have until **April 14, 2023** to file a memorandum indicating whether he believes Defendants have complied with this Order. If Plaintiff believes that Defendants have not complied with this Order, Plaintiff's memorandum must specifically identify (1) the provision(s) in this Order Plaintiff contends Defendants have not complied with and (2) how Defendants have failed to comply with the identified provision(s). Defendants will then have **14 days from Plaintiff's filing** to respond to the alleged deficiencies.  Absent a separate Court order, further briefing on these discovery issues will not be permitted. Once the undersigned is satisfied that discovery is complete, a new and final deadline for dispositive motions will be set.

### IT IS THEREFORE ORDERED THAT:

1. Plaintiff's "Motion for An Order Compelling Disclosure or Discovery Federal. Rule. Civil Procedure. (a)(3)(B)" (Doc. #95) is **GRANTED** in part and **DENIED** in part;

2. Plaintiff's "Motion to Amend and Supplement and Order Compelling Disclosure or Discovery Federal. Rule. Civil Procedure. (a)(3)(B)" (Doc. #97) is **GRANTED** in part and **DENIED** in part;

3. Plaintiff's "Motion for an Order Compelling Disclosure, Discovery Fed R. 34, 36, & 37 Due to Defendants Failure to Properly Respond to Admissions and the Late Turning Over of Admissions [Plaintiff] Request Leave to Issue [Interrogatories]" (Doc. #116) is **GRANTED** in part and **DENIED** in part;

4. Plaintiff's "Motion to Strike" (Doc. #117) is **DENIED**;

5. State of Ohio, Interested Party's "Motion for a Protective order; in the alternative Motion to Quash Interrogatories Served Upon William Cool, Non Party [Doc. 122]" (Doc. #124) is **GRANTED**;

6. Defendant Shawn Frye's Motion for a Protective Order (Doc. #125) is **GRANTED**;

7. Defendant Ryan Kammer's Motion for a Protective Order (Doc. #126) is **GRANTED**;

8. Defendant Denise Paddock's Motion for a Protective Order (Doc. #127) is **GRANTED**; and

9. Defendant Brian Preston's Motion for a Protective Order (Doc. #128) is **GRANTED.**

February 24, 2023

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge