## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ANTHONY L. MCKINNEY, | : | Case No. 2:20-cv-1450 |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | District Judge Michael H. Watson |
| vs. | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| DENISE PADDOCK, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## REPORT AND RECOMMENDATIONS[1]

This matter is presently before the Court on the parties' second cross-motions for summary judgment. (Doc. #s 152, 155).[2] Both Plaintiff and Defendants filed responsive memorandums to the opposing party's motions. (Doc. #s 156, 167, 169, 177). The pending motions have been referred to the undersigned for a Report and Recommendations pursuant to 28 U.S.C. § 636 and General Order 22-05. This matter is now ripe for review.

### I.      BACKGROUND

Plaintiff, Anthony L. McKinney, who is currently in the custody of Ohio Department of Rehabilitation and Correction ("ODRC") serving his sentence at Madison Correctional Institution, brought this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's Complaint consists of 44 handwritten pages asserting a myriad of allegations against the Warden of Ross Correctional Institution ("RCI"), as well as, employees of London Correctional Institution ("LOCI"), including,

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.
[2] The undersigned previously issued a Report and Recommendations on the parties' first cross-motions for summary judgment on July 15, 2022. (Doc. #96). However, on January 11, 2023, District Judge Watson found that additional discovery in the case needed to occur and rejected the July 15, 2022 Report and Recommendations as moot. (Doc. #130).

Denise Paddock, Lieutenant Ryan Kammer, Lieutenant Shawn Frye, former Sergeant Brian Preston, Warden Norman Robinson, and "hearing officers unknown." (Doc. #4).

According to Plaintiff, Defendants violated his constitutional rights under the First, Fourth, Eighth, Thirteenth, and Fourteenth Amendments. *Id.* Additionally, Plaintiff alleges several state law counts against Defendants, including breach of contract, theft, larceny, extortion, and defamation. *Id.* Specifically, the claims in Plaintiff's Complaint initially stem from an incident that occurred on March 18, 2019, when Plaintiff was working in the LOCI law library with another inmate and requested that the law librarian print certain documents. *Id.* at 146. The law librarian, Defendant Paddock, printed the documents requested by Plaintiff and identified them as containing content related to the sovereign citizens, which is identified in Ohio prisons as an active security threat group ("STG"). (Doc. #4, *PageID* #s 146-147, 187; Doc. #155-4, *PageID* #2622). Defendant Paddock informed Plaintiff that he was not permitted to have sovereign citizen documents and instructed him to take them to another corrections officer for inspection. (Doc. #4, *PageID* #147; Doc. #155-4, *PageID* #2622). Plaintiff was then escorted to Defendant Frye's office where he was instructed to hand over the disputed documents so that they could be reviewed by LOCI's legal counsel. (Doc. #4, *PageID* #s 148, 187). While Plaintiff initially objected, he eventually complied and relinquished the disputed documents to Defendant Frye. (Doc. #4, *PageID* #148; Doc. #155-11, *PageID* #s 2779-80). No conduct report was issued at this time. (Doc. #4, *PageID* #s 148-49; Doc. #155-11, *PageID* #s 2780-81).

On March 31, 2019, Plaintiff issued an informal complaint at the prison kiosk, detailing the March 18, 2019 incident and alleging numerous claims against Defendants Paddock and Frye. (Doc. #4, *PageID* #s 149-50; Doc. #155-5, *PageID* #2638). As part of this grievance, Plaintiff made several "demands" of LOCI, including releasing him from custody, returning his personal

property, denying Defendant Frye's request to use credit, discharging Defendants Paddock and Frye from their positions, hiring new library employees, and providing Plaintiff more time in the law library. (Doc. #4, *PageID* #s 149-150, 153-57; Doc. #155-5, *PageID* #2638).

Meanwhile, LOCI legal counsel conducted a review of the documents taken from Plaintiff and ultimately concluded that the documents did, in fact, contain unauthorized content related to the sovereign citizens. (Doc. #4, *PageID* #187). As a result, a corrections officer, Defendant Kammer, authored a conduct report on April 9, 2019, describing the incident and his finding that Plaintiff's possession of the documents violated "Rule 17 - Engaging in unauthorized group activities." *Id.* Before Plaintiff received notice of the conduct report, he responded to his informal grievance at the prison kiosk, informing LOCI prison officials that they demonstrated their "general acquiescence" to his demands by virtue of their failure to respond, thereby constituting an "agreement" to his terms and demands "by operation of law." (Doc. #4, *PageID* #s 149-57; Doc. #155-5, *PageID* #2638). The next morning, Plaintiff received the April 9, 2019 conduct report informing him of Defendant Kammer's finding that he violated Rule 17. (Doc. #4, *PageID* #s 150, 187).

Due to the alleged violation of Rule 17, the matter was referred to the Rules Infraction Board ("RIB"). *Id.* at 190. Believing that such charges were "fictitious" and that he already had a "contract" with prison officials on the alleged violation, Plaintiff decided not to participate in the RIB proceedings. *Id.* at 149-158. When Plaintiff was brought to the RIB hearing on April 18, 2019, he informed them of his general objections to the procedure and their jurisdiction but otherwise did not participate in defending the charge. *See id.* at 149-58, 190-96. As a result, the RIB concluded that Plaintiff violated Rule 17 and sentenced him to 90 days in Limited Privilege Housing ("LPH" or "the hole"). *Id.* at 149-158, 190-96. After the hearing, Plaintiff was brought

to a holding cell where he was strip-searched by two unknown corrections officers for contraband. *Id*. at 153-54.

The next morning, on April 19, 2019, Defendant Preston, a corrections officer, was sent to Plaintiff's cell to pack up his belongings since he had been moved to LPH. (Doc. #4, *PageID* #158; Doc. #155-6, *PageID* #2654). Upon arriving at Plaintiff's cell, Defendant Preston concluded that Plaintiff was in violation of "Rule 51 – possessing contraband and materials in excess of the permitted amount for inmates" and, thus, issued a new conduct report on this basis. (Doc. #4, *PageID* #s 158-60, 198; Doc. #155-6, *PageID* #s 2652-54). According to the conduct report, the excess contraband included legal papers, legal books, two towels, one pair of altered sweatpants, two pairs of socks, one state shirt, and one pillow. (Doc. #4, *PageID* #198). Plaintiff did not participate in the RIB proceedings stemming from this conduct report and was found to be in violation of Rule 51. *Id*. at 198-203. While no additional time in LPH was imposed, Plaintiff's locker boxes were temporarily held while he was in segregation and when he was transferred from LOCI to RCI. *Id*. at 161, 198-203.

Due to the abuses he alleges he has suffered, Plaintiff filed the instant action on March 24, 2020. (Doc. #4).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106

4

S. Ct. 2548 (1986). Additionally, this initial burden may be satisfied by the moving party "pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Barnhart v. Pickrel Schaeffer & Ebeling Co., L.P.A.,* 12 F.3d 1382, 1389 (6th Cir. 1993).

The burden then shifts to the non-moving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Here, in opposing summary judgment, the non-moving party cannot "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986). Indeed, unverified pleadings and self-serving affidavits alone are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Washington Cty. Career Ctr*., 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013).

Finally, in ruling on a motion for summary judgment, the court is "not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. *See id*.

## III. DISCUSSION

### A. Preliminary Matters

Before proceeding to the merits of the parties' motions, the undersigned finds that it is necessary to delineate what is and is not before the Court. At the outset, the undersigned

acknowledges that this case has a rather unusual and storied history. Most of these difficulties arose out of a discovery conference held by the undersigned on November 12, 2021, where Defendants' prior counsel, Lori Duckworth, made certain statements indicating that Plaintiff was "exonerated" following an investigation by the Federal Bureau of Investigation ("FBI") and/or the Ohio Bureau of Criminal Investigation ("BCI"). *See* Doc. #120, *PageID* #s 2246-50. In response, the undersigned ordered Defendants to provide Plaintiff with any documents that existed to support these statements. *See id.*; *see also* Doc. #132, *PageID* #s 2415-20. When no such discovery was received on any external investigation, Plaintiff filed numerous requests to obtain this information. *See e.g.*, Doc. #s 95, 97, 116, and 139. Compounding this issue was the fact that Ms. Duckworth had left the Ohio Attorney General's Office and that Defendants' new counsel consistently insisted that Ms. Duckworth was mistaken and that no such investigation occurred. *See e.g.*, Doc. #107, *PageID* #1622; Doc. #107-1, *PageID* #1902; Doc. #118, *PageID* #s 2193-94; Doc. #119, *PageID* #s 2198-99. Indeed, most of the discovery disputes that consumed this case revolved around the uncertainty as to whether an outside investigation and ensuing "exoneration" even occurred.

Ultimately, the disputes over the existence of this alleged external investigated resulted in the undersigned ordering Defendants' legal counsel to file an affidavit outlining (1) the steps they took to confirm that the FBI or any entity outside of ODRC was not involved in the investigation of Plaintiff's STG status; (2) the circumstances, if any, under which the FBI or any entity outside of ODRC would become involved with a security threat group analysis; (3) the efforts that they and Ms. Duckworth undertook to ensure that this case was properly transitioned from Ms. Duckworth before she withdrew as counsel in September 2022; and (4) any attempts, including the use of non-party subpoenas, to contact Ms. Duckworth and to resolve any factual

misrepresentations that have been made by the Ohio Attorney General's Office to this Court. (Doc. #132, *PageID* #2420).

In response, Defendants' counsel filed three affidavits, including that of Corrections Warden Assistant I, Matthew Crisler; Assistant Attorney General Marcy Vonderwell; and Ms. Duckworth. (Doc. #s 137-1, 137-2, 137-3). Upon review, the undersigned determined that the "affidavits clarify that there was no investigation by the FBI or any other entity outside of ODRC regarding Plaintiff's [STG] status and the activities surrounding the March 18, 2019 incident." (Doc. #147, *PageID* #2519).

Despite this determination, Plaintiff's summary judgment briefings are replete with references to the non-existent investigation and exoneration by the FBI. *See* Doc. #s 155, 167, 173. Indeed, most of the claims that he moves for summary judgment on have morphed into their own claims based on his belief that this investigation occurred or contain facts related to this belief. *See id.* Thus, to the extent that Plaintiff brings new or altered claims based on his belief that this investigation occurred, his claims fail for two reasons. First, Plaintiff's Complaint does not contain any facts or claims related to an external investigation by the FBI or any other entity outside ODRC regarding his STG status. As such, Plaintiff cannot move for summary judgment on claims that were not raised in his Complaint. Second, and more significantly, this Court has already determined that no such external investigation occurred. Accordingly, Plaintiff's reliance on allegations that the Court has already determined to be unfounded will not be considered as evidence sufficient to raise genuine issues of material fact. Here, the undersigned recognizes that Plaintiff is proceeding *pro se*. Nonetheless, he is required to set forth admissible evidence that supports his properly-pled claims and raises genuine issues for trial in opposing Defendants' properly-supported summary judgment motion. *See McKinnie v. Roadway Express, Inc.,* 341 F.3d

554, 558 (6th Cir. 2003) (*pro se* litigants "are not entitled to special treatment, including assistance in regard[] to responding to dispositive motions.").

Similarly, the undersigned will not entertain Plaintiff's new claims against Sergeant Mayer, Sergeant Newkirk, or any other individual who was not properly named as a Defendant in Plaintiff's Complaint. Additionally, the undersigned will not consider Plaintiff's extensive arguments on copyright infringement. While not the model of clarity, Plaintiff's Complaint can in no way be construed as supporting a claim for copyright infringement under 17 U.S.C. § 501-503. Although *pro se* pleadings must be liberally construed and are "held to less stringent standards than formal pleadings drafted by lawyers[,]" *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, (2007), *pro se* parties must still satisfy basic pleading requirements. *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989).  Indeed, "even a *pro se* complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Ogle v. Columbia Gas Transmission, LLC,* 513 F. App'x 520, 522 (6th Cir. 2013).

Thus, as noted above, Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides a civil cause of action for persons "who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem*, 378 F.3d 566, 576 (6th Cir. 2004). In order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250 (1988); *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 814 (6th Cir. 1996). Further, because § 1983 is a method for vindicating federal rights as opposed to a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific

constitutional right allegedly infringed. *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807 (1994).

In this case, the undersigned has liberally construed Plaintiff's allegations to set forth the following federal claims: retaliation and access to the courts under the First Amendment, an illegal search and seizure under the Fourth Amendment, cruel and unusual punishment under the Eighth Amendment, slavery under the Thirteenth Amendment, and denial of due process under the Fourteenth Amendment. *See* Doc. #4. Additionally, Plaintiff alleges several state law counts against Defendants, including breach of contract, theft, larceny, extortion, and defamation. *Id.*

In response, Defendants initially counter that Plaintiff failed to exhaust his administrative remedies and, therefore, his claims should be dismissed for failure to comply with the Ohio Grievance Process. (Doc. #152, *PageID* #s 2538-41). However, even if Plaintiff did exhaust his administrative remedies, Defendants maintain that there is no genuine dispute of material fact related to his claims and, thus, they are entitled to judgment as a matter of law. *Id.* at 2541-52. The undersigned will address each of these claims in turn.

## B.     Exhaustion of Administrative Remedies

Defendants first move for summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. (Doc. #152, *PageID* #s 2538-41). As failure to exhaust administrative remedies is "an affirmative defense under the PLRA[,]" Defendants bear the burden of proof on this issue. *Jones v. Bock*, 549 U.S. 201, 216, 127 S. Ct. 910 (2007); *see also Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) ("[T]he failure to exhaust 'must be established by the defendants.'") (quoting *Napier v. Laurel Cnty, Ky.,* 636 F.3d 218, 225 (6th Cir. 2011)). Thus, "[w]hen the defendants in prisoner civil rights litigation move for summary judgment on administrative exhaustion grounds, they must prove that

no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citing *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012)); *see also Blissit v. Fiquiris*, 345 F. Supp. 3d 931 (S.D. Ohio 2018) (granting summary judgment based upon inmate's failure to comply with Ohio's grievance process for excessive force claim, discussing burden of proof).

The PLRA bars prisoners from filing federal lawsuits under 42 U.S.C. § 1983 "with respect to prison conditions…until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In discussing the applicability of the PLRA exhaustion requirement, the Supreme Court has made clear that it "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983 (2002). Further, such exhaustion is "mandatory under the PLRA and unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211.

In order "[t]o properly exhaust a claim, prisoners must tak[e] advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review, and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller,* 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford v. Ngo,* 548 U.S. 81, 90 (2006)). Proper exhaustion "demands compliance with an agency's deadlines and other critical procedural rules" so that the adjudicative system can function effectively. *Woodford*, 548 U.S. at 90-91.

Despite this, the PLRA only requires prisoners to exhaust all "available" administrative remedies. 42 U.S.C. § 1997e(a). Thus, if the administrative remedy is considered unavailable, the requirement to exhaust may be excused. As such, the Supreme Court has identified three situations

10

where an administrative procedure is unavailable to prisoners and is therefore not subject to the exhaustion requirement: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it" because it is "so opaque" or "so confusing"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake,* 578 U.S. 632, 643-44 (2016).

The procedure established for resolving inmate complaints in Ohio is a three-step process that is codified in Ohio Administrative Code ("O.A.C.") § 5120-9-31(K) (eff. May 1, 2008).[3] The first step requires inmates to submit an informal complaint resolution form to the supervisor of the department or staff member responsible for the issue within fourteen days of the complained-of event. O.A.C. § 5120-9-31(K)(1) (eff. May 1, 2008). Within seven days of receiving the informal complaint, ODRC shall provide a written response that "reflect[s] an understanding of the inmate's complaint, [is] responsive to the issue, cite[s] any relevant departmental or institutional rules or policies and specif[ies] the action taken, if any." *Id.*  Any failure on the part of ODRC to provide such a response within the prescribed timeframe constitutes waiver and allows the inmate to proceed to step two of the grievance procedure. *Id.*

Further, inmates otherwise dissatisfied with the results of step one may proceed to step two by filing a notification of grievance with the inspector of institutional services within fourteen days

---

[3] In their motion for summary judgment, Defendants refer to the current code version of O.A.C. § 5120-9-31, which became effective on March 21, 2021, and outlines the procedure in subsection (J) as opposed to subsection (K). However, Plaintiff's informal complaints were initiated during the effective dates for two prior versions of this section, O.A.C. § 5120-9-31 (eff. May 1, 2008) and O.A.C. § 5120-9-31 (eff. Apr. 5, 2019). While the changes made in these three versions do not change the substantive analysis of Plaintiff's claims, the undersigned will refer to version effective from May 1, 2008 until April 4, 2019 to lay out the procedure since this is when the incident underlying the first informal complaint occurred. However, when discussing the exhaustion of specific claims, the undersigned will cite to the version in effect at that time of the particular incident.

of the informal complaint response or waiver of the informal complaint step. O.A.C. § 5120-9-31(K)(2) (eff. May 1, 2008). Thereafter, the inspector of institutional services has fourteen days to provide the inmate with a written response to the notification of grievance that "summarize[s] the inmate's complaint, describe[s] what steps were taken to investigate the complaint and the inspector of institutional service[s]'s findings and decision." *Id*. Upon notice to the inmate, the inspector of institutional services may extend the time to provide such a response by up to fourteen days. *Id*. However, if a response has not been provided within twenty-eight days from the receipt of the grievance, the inmate may proceed to step three of the grievance procedure. *Id*.

Finally, if otherwise dissatisfied at step two, the inmate may proceed to step three by submitting an appeal to the office of the chief inspector at ODRC within fourteen days of the date of the grievance disposition. O.A.C. § 5120-9-31(K)(3) (eff. May 1, 2008). Decisions of the chief inspector are final, meaning that the O.A.C. provides no further means for appeal. *Id*.

In this case, the allegations in Plaintiff's Complaint appear to be initially raised in three separate informal complaints: (1) the March 31, 2019 informal complaint against Defendants Paddock and Frye regarding the March 18, 2019 incident and confiscation of his documents with STG content; (2) the April 13, 2019 informal complaint regarding Defendant Kammer asking Plaintiff to sign the conduct report for the Rule 17 violation; and (3) the May 24, 2019 informal complaint regarding Plaintiff's missing property from the April 18, 2019 pack-up and his transfer from LOCI to RCI on May 16, 2019. *See* Doc. #4, *PageID* #s 149-62; Doc. #152-1, *PageID* #s 2570-75.

According to Defendants, the grievance process was available to Plaintiff at all times and his failure to comply with this mandatory process merits granting summary judgment in their favor. (Doc. #152, *PageID* #s 2540-41). In support, Defendants provided the affidavit of ODRC Assistant

Chief of the Chief Inspector's Office Emma Collins, who is the custodian of grievance records. (Doc. #152-1, *PageID* #s 2566-68). In her affidavit, Ms. Collins attests that she oversees the grievance procedure at LOCI and has personal knowledge of the grievances initiated by Plaintiff in 2019. *Id*. at 2566-67. Specifically, with regard to Plaintiff's March 31, 2019 informal complaint, Ms. Collins attests that it was successfully escalated to a formal grievance on April 11, 2019. *Id*. at 2566. However, by not filing an appeal with the Office of the Chief Inspector after Defendant Kammer responded to his formal grievance on April 12, 2019, Plaintiff failed to complete the mandatory third step in the grievance process. *Id*.

As for Plaintiff's April 13, 2019 informal complaint, Ms. Collins attests that Defendant Kammer responded on April 18, 2019 but Plaintiff did not file the notification of grievance, and, therefore, did not continue to the second step of the grievance process. *Id*. at 2567.

Finally, in reference to Plaintiff's May 24, 2019 informal complaint regarding his missing property from the April 19, 2019 pack-up and the May 16, 2019 transfer, Ms. Collins attests that while the informal complaint does not reference Defendant Preston, Plaintiff successfully escalated the complaint through all three steps of the grievance process. *Id*. Here, Ms. Collins also verified that Plaintiff successfully exhausted his administrative process on three out of the five occasions in 2019, thereby demonstrating that he was aware of how to properly use grievance procedures. *Id*. Further, attached to Ms. Collins' affidavit is a verified copy of Plaintiff's grievance history from 2019 that substantiates her attestations. *See id*. at 2569-79.

In response, Plaintiff disputes Defendants' position that he failed to comply with the grievance process and declares that Ms. Collins' affidavit constitutes perjury. *See* Doc. #155, *PageID* #s 2595-96; Doc. #173, *PageID* #s 2983-84; Doc. #173-1, *PageID* #3014. Specifically, with regard to his March 31, 2019 informal complaint, Plaintiff asserts that "on 4/8/2019 the

defendant defaulted by failing to respond." (Doc. #155, *PageID* #2595; *see also* Doc. #173, *PageID* #s 2983-84; Doc. #173-1, *PageID* #3014). Thus, according to Plaintiff, Defendant Kammer's failure to respond to Plaintiff's informal complaint with a disposition "made escalation to appeal unavailable." (Doc. #173, *PageID* #2983). While Plaintiff acknowledges that Defendant Kammer responded on April 11, 2019, he contends that the response was untimely and that Defendant Kammer had already "defaulted." *Id.* at 2983-84. Here, Plaintiff also criticizes Ms. Collins' affidavit for only referring to Defendant Kammer's April 11, 2019 response and not recognizing that Defendant Kammer had failed to provide a timely response three days prior. *Id.* at 2984; *see also* Doc. #173-1, *PageID* #3014. Further, Plaintiff argues that Ms. Collins's statements that he was able to exhaust his administrative remedies later in 2019 only serve to demonstrate that the grievance procedure was available at RCI but not at LOCI. *Id.* at 2983-84. Finally, Plaintiff contends that he nonetheless tried to appeal his March 31, 2019 and April 13, 2019 informal complaints and attaches what purports to be letter to the chief inspector requesting these appeals. *See id.* at 2984 (citing Doc. #173-1, *PageID* #3005). The accompanying mail slip has a handwritten date of February 11, 2019 and a RCI receipt stamp of February 13, 2020. (Doc. #173-1, *PageID* #3004).

Plaintiff's arguments are unavailing for several reasons. As an initial matter, Plaintiff's argument that Defendant Kammer's failure to timely respond to his March 31, 2019 informal complaint constituted "default" and, thereby excused his performance at step three is based on a misunderstanding of the grievance procedure. Indeed, it is undisputed that Defendant Kammer did not respond to Plaintiff's informal complaint within the prescribed seven-day period. However, this failure did not serve to excuse Plaintiff from completing the rest of the process but, instead, served to "automatically waive[]" the first step and allow Plaintiff to proceed to step two. O.A.C.

§ 5120-9-31(K)(1) (eff. May 1, 2008). Accordingly, as reflected on the grievance history report and acknowledged by Defendants, Plaintiff's March 31, 2019 informal complaint was escalated to a formal grievance when ODRC failed to timely respond. (Doc. #152-1, *PageID* #s 2566, 2570-71). Defendant Kammer timely responded to this grievance on April 12, 2019. *Id*. Thus, Plaintiff's subsequent failure to appeal to the chief inspector, *see id*., demonstrates that Plaintiff failed to exhaust his March 31, 2019 informal complaint.

Further, Plaintiff's statements that the grievance appeal process was not available at LOCI and/or while in LPH is not supported by the record. In this case, apart from the unsworn assertions contained in his summary judgment briefings, Plaintiff does not present any evidence in support of his claim that the grievance process was unavailable to him at LOCI and/or while in LPH.[4] *See Maston v. Montgomery Cnty. Jail Med. Staff Pers.,* 832 F. Supp. 2d 846, 851-52 (S.D. Ohio 2011) (pro se party cannot rely on allegations in unsworn filings).

Additionally, the declaration that Plaintiff provides to challenge the integrity of Ms. Collins' affidavit offers no more than unsupported, conclusory allegations and, therefore, also fails to establish that the Defendants hindered Plaintiff's ability to exhaust the grievance process. The Sixth Circuit requires an affidavit to contain a certain baseline level of specificity. *See, e.g., Pierce v. Rowland*, No. 20-5731, 2021 WL 3929549, at *4 (6th Cir. Sept. 2, 2021) (citing *Revis v. Meldru*m, 489 F.3d 273, 287-88 (6th Cir. 2007)) ("[A] plaintiff cannot create a fact dispute by submitting an affidavit chock full of conclusory allegations."); *Chambers v. Hardy*, No. 19-5201, 2019 WL 8138590, at *4 (6th Cir. Oct. 30, 2019) (inmate's statements that he "attempted to exhaust" his administrative remedy and "filed a BP-11 and never heard any response on it" were

---

[4] The undersigned also notes that the O.A.C. specifically provides that "Inmates may utilize the inmate grievance procedure regardless of any disciplinary status, or other administrative or legislative decision to which the inmate may be subject." O.A.C. § 5120-9-31(D) (eff. May 1, 2008).

"vague and unsupported by specific facts" necessary to defeat an otherwise proper summary judgment motion); *Belser v. James*, No. 16-2578, 2017 WL 5479595, at *2 (6th Cir. June 6, 2017) (inmate's statements that a grievance coordinator "would not process none of the grievances" and "came to [the inmate's] cell and told [him] to sign off on the grievance and that nothing was going to be done[;]" that he received "no response" from the grievance coordinator after "several kites[;]" and that the grievance coordinator "would not process or give an identifier number for some of the grievances" were too "generalized" to create a genuine issue of material fact).

Further, even if there were evidence to support Plaintiff's claim that the appeal process was made unavailable to him, the Sixth Circuit still requires prisoners to make "affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) (quoting *Napier*, 636 F.3d at 223). Accordingly, "[w]hen a prisoner makes affirmative efforts to comply but does not succeed," the inquiry turns on "whether those efforts to exhaust were sufficient under the circumstances." *Id*. (quoting *Risher v. Lappin,* 639 F.3d 236, 240 (6th Cir. 2011)) (internal quotation marks omitted). Here, the only evidence that Plaintiff relies upon in support of his claim that he tried to appeal his grievances is an unauthenticated and undated exhibit containing what purports to be a letter to the chief inspector requesting appeals of his March 31, 2019 and April 13, 2019 informal complaints. *See* Doc. #173-1, *PageID* #3005. While the letter itself is undated, the accompanying mail slip indicates that the letter was received by RCI's mail clerk on February 13, 2020,[5] which is almost a year after the informal complaints at issue were initiated. *See* Doc. #155-9, *PageID* #2774; Doc. #173-1, *PageID* #s 3004-05. Accordingly, even if this letter were

---

[5] The handwritten date on the mail slip indicates that it was sent on February 11, 2019. (Doc. #173-1, *PageID* #3004). However, given that the letter addressed Plaintiff's informal complaints from March 31, 2019 and April 13, 2019, the undersigned interprets the reference to 2019 as a typographical error.

accepted as a credible source, the significant lapse in time alone would make the letter "insufficient under the circumstances" to demonstrate that Plaintiff made "affirmative efforts" to exhaust his remedies. *See Lee*, 789 F.3d at 677.

In short, Plaintiff's statements and declarations are insufficient to create a genuine issue of material fact that Plaintiff appealed these grievances or that the grievance procedure was rendered unavailable to him.

Moreover, on this record, the undersigned finds that Defendants have submitted evidence of non-exhaustion of the claims arising out of the March 18, 2019, April 9, 2019, and the April 19, 2019 incidents such that "no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Mattox*, 851 F.3d at 590. Specifically, the undisputed evidence establishes that Plaintiff's claims arising out of the March 18, 2019 incident were documented in an informal complaint filed by Plaintiff on March 31, 2019. (Doc. #4, *PageID* #s 149-50; Doc. #152-1, *PageID* #s 2566, 2570). This informal complaint was then escalated to a formal grievance on April 11, 2019 when ODRC failed to timely respond. (Doc. #152-1, *PageID* #s 2566-67, 2570-72). On April 12, 2019, Defendant Kammer timely responded to the formal grievance. *Id.* Thereafter, Plaintiff did not appeal the disposition of the formal grievance and, therefore, failed to complete the third step in the grievance process. *See id.*; *see also* O.A.C. § 5120-9-31(K)(2)-(3) (eff. May 1, 2008).

Similarly, the undisputed evidence establishes that Plaintiff documented his claims arising out of the April 9, 2019 conduct report against Defendant Kammer in an informal complaint filed on April 13, 2019. (Doc. #152-1, *PageID* #s 2567, 2573). Defendant Kammer timely responded to this informal grievance on April 18, 2019. *Id.* Since Plaintiff did not subsequently file a

notification of grievance, he failed to complete the second step of the grievance process. *See id.*; *see also* O.A.C. § 5120-9-31(J)(1)-(2) (eff. April 5, 2019).

Lastly, the undisputed evidence establishes that Plaintiff documented his claims against Defendant Preston regarding the April 19, 2019 pack-up in an informal complaint filed on May 24, 2019. (Doc. #152-1, *PageID* #s 2567, 2574). This informal complaint also included separate allegations regarding Plaintiff's missing property resulting from his transfer from LOCI to RCI on May 16, 2019. *Id.* Thus, while the informal complaint was timely filed (and ultimately exhausted) on Plaintiff's claims related to his May 16, 2019 transfer, the claims related to the April 19, 2019 pack-up that is at issue in this case were not filed within the fourteen-day window prescribed by O.A.C. § 5120-9-31(J)(1) (eff. April 5, 2019). *See id.* Accordingly, Plaintiff's failure to timely file his informal complaint on the claims stemming from the April 19, 2019 pack-up also demonstrate that he did not comply with grievance procedure. *See id.*; *see also* O.A.C. § 5120-9-31(J)(1) (eff. April 5, 2019).

Again, proper exhaustion "demands compliance with an agency's deadlines and other critical procedural rules" so that the adjudicative system can function effectively. *Woodford*, 548 U.S. at 90-91. Further, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. Accordingly, the undersigned finds that Plaintiff failed to exhaust his administrative remedies pursuant to the mandatory PLRA requirements with respect to the claims arising out of the incidents at issue in this case.

For these reasons, the undersigned **RECOMMENDS** that Defendants' motion for summary judgment on administrative exhaustion be **GRANTED**. However, in the event that

District Judge Watson disagrees with this analysis, the undersigned will also consider the merits on the remainder of Plaintiff's claims.

### C.  Retaliation under the First Amendment

Both Plaintiff and Defendants move for summary judgment on Plaintiff's retaliation claims. (Doc. #152, *PageID* #s 2541-43; Doc. #155, *PageID* #s 2596-98, 2601). Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *See Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To state a retaliation claim, a plaintiff must allege three elements: (1) that he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *Id.*

In this case, Plaintiff generally alleges multiple instances of retaliation against Defendants. (Doc. #4, *PageID* #s 153, 154, 156, 161, 178). Specifically, Plaintiff's Complaint appears to allege several adverse actions taken against him as a result of him filing an informal complaint at the prison kiosk, including the confiscation of his legal materials containing STG content; the issuance of the first conduct report; his subsequent sentence to LPH; the strip-search conducted prior to his LPH sentence; the issuance of the second conduct report; the subsequent confiscation of his property that was over the permitted limit; and his transfer to RCI. *See id.*[6]

In applying these elements to Plaintiff's claims, the parties do not dispute that Plaintiff engaged in protected conduct to the extent that he was working on legitimate legal work and by

---

[6] In his motion for summary judgment, Plaintiff also alleges that "[t]he withholding of the results of the FBI, BCI investigation/ exoneration[] was adverse action[] because [] during [the November 12, 2021] proceedings[,] plaintiff learned that the defendants initiated a criminal investigation with the FBI, BCI, etc…" (Doc. #155, *PageID* #2596); *See also* Doc. #167, *PageID* #s 2948-49, 2951; Doc. #173, *PageID* #2977. However, as outlined in the Preliminary Matters section above, this claim fails for two reasons. First, this was not an adverse action alleged in his Complaint. *See* Doc. #4. Second, this Court has already determined that no documents were withheld by Defendants or their counsel and that no external investigation ever occurred. (Doc. #147).

filing the informal complaint. (Doc. #152, *PageID* #2541). *See Herron v. Harrison,* 203 F.3d 410, 415 (6th Cir. 2000) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."); *see also Clark v. Johnston,* 413 F. App'x 804, 814 (6th Cir. 2011) (recognizing that inmates enjoy a First Amendment right to file grievances against prison staff). Accordingly, Plaintiff's conduct is sufficient to establish the first element of a retaliation claim.

The second prong of a retaliation claim evaluates whether there was an adverse action taken against the plaintiff.  As noted above, Plaintiff identifies numerous events that he believes to constitute adverse action. Of these events, the undersigned finds that each could arguably constitute adverse action with the exception of his transfer to RCI. Indeed, the Sixth Circuit has routinely held that, absent extraordinary circumstances, transfer to another prison is not considered adverse for purposes of establishing a retaliation claim. *See e.g., Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003); *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013); *Mandela v. Campbell*, 181 F.3d 102 (Table) (6th Cir. 1999).  As Plaintiff has not alleged any extraordinary circumstances arising from his transfer from LOCI to RCI, it cannot be found to constitute an adverse action. However, assuming *arguendo* that Plaintiff's allegations related to the confiscation of his property, the issuance of the conduct reports, his sentence to LPH, and the subsequent strip-search constituted adverse actions, the undersigned finds that the second element is met and will proceed to the final step.

The third and last prong of a retaliation claim is causation.  Defendants challenge Plaintiff's ability to produce evidence of a "causal connection" between the first two elements of his retaliation claim.  Under the third element, "the subjective motivation of the defendants is at issue." *Thaddeus-X*, 175 F.3d at 399.  Notably, "conclusory allegations of retaliatory motive 'unsupported

by material facts will not be sufficient to state ... a claim under § 1983.'" *Harbin–Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). Instead, retaliation claims must include a "chronology of events from which retaliation may plausibly be inferred." *Ishaag v. Compton*, 900 F.Supp. 935 (W.D. Tenn. 1995) (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)).

Apart from his conclusory allegations that he was retaliated against for utilizing the grievance procedure, Plaintiff's Complaint fails to include any factual allegations suggesting that Defendants were motivated by protected conduct. Similarly, Plaintiff's summary judgment briefings also fail to demonstrate such a causal connection. In fact, Plaintiff's summary judgment briefings largely focus on Plaintiff's mistaken belief that an external investigation conducted by the FBI and BCI exonerated him. *See* Doc. #155, *PageID* #s 2597-98; Doc. #167, *PageID* #s 2948-51; Doc. #173, *PageID* #s 2976-77. According to Plaintiff, Defendants' failure to turn over the results of this external investigation demonstrates that their adverse actions were motivated by the filing of his informal complaint. *See id.* However, as explained in the Preliminary Matters section above, the Court has already found Plaintiff's contentions that he was exonerated by an external investigation to be unsubstantiated. Further, these allegations were not raised in Plaintiff's Complaint. Here, it is also noted that Plaintiff's contentions that he did not receive the results of the internal investigation, (Doc. #167, *PageID* #s 2949-52; Doc. #173, *PageID* #s 2976-77), are without support. Instead, the undisputed evidence demonstrates that Plaintiff received the conduct reports for both the Rule 17 and Rule 51 violations, which detail the facts of the underlying violations as well as the dispositions. (Doc. #4, *PageID* #s 150, 158-60, 187, 198). As such, these

unsupported allegations fail to raise a genuine issue as to a causal connection between Defendants' purported adverse actions and Plaintiff's protected conduct.

Moreover, a review of the record demonstrates that no such causal connection exists. For instance, Plaintiff's claim that Defendant Paddock retaliated against him by taking his legal materials with STG content as a result of him filing an informal complaint is contradicted simply by the sequence of the events alleged. Indeed, the undisputed evidence establishes that Plaintiff's STG documents were taken on March 18, 2019, which was *before* Plaintiff initiated his informal complaint at the prison kiosk on March 31, 2019. (Doc. #4, *PageID* #s 148-53, 187). Thus, the evidence demonstrates a chronology of events that is inconsistent with Plaintiff's argument that Defendant Paddock's confiscation of his legal materials containing STG content was motivated by the filing of his informal complaint at the prison kiosk. Therefore, Defendant Paddock is entitled to summary judgment on Plaintiff's retaliation claim.

Additionally, Defendant Kammer's issuance of the conduct report was a direct result of Plaintiff's violation of Rule 17 for possessing the STG content. Indeed, Defendant Kammer states in the conduct report that the documents suspected as containing STG content were found in Plaintiff's possession on March 18, 2019 and that the subsequent investigation revealed that the documents were, in fact, associated with the unauthorized group, the sovereign citizens. *Id*. at 187. As stated in the conduct report, Rule 17 prohibits inmates from "[e]ngaging in unauthorized group activities as set forth in paragraph (B) of [O.A.C. §] 5120-9-37[,]" which extends to an inmate knowingly or intentionally "[p]ossessing […] any material related to an unauthorized group." *Id*; *see also* O.A.C. § 5120-9-06(C)(17). Having reason to believe that Plaintiff violated Rule 17, Defendant Kammer reasonably issued a conduct report pursuant to O.A.C. § 5120-9-07(B), and the matter was referred to the RIB for a hearing. *Id*. Finally, while Plaintiff chose not to participate

22

in the proceedings, the RIB (as opposed to Defendant Kammer or any other Defendant named in this case) found Plaintiff guilty of violating Rule 17 and sentenced him to LPH for 90 days under O.A.C. § 5120-9-09(A)(4). (Doc. #4, *PageID* #s 190-196). Accordingly, despite Plaintiff's unsupported claims otherwise, the alleged adverse actions of Defendant Kammer's conduct report and the RIB's sentence to LPH were not motivated by the filing of Plaintiff's grievance on March 31, 2019. Instead, the evidence of record demonstrates that the incidents were the direct result of Plaintiff's possession of STG contraband on March 18, 2019, which constituted a rule violation. Therefore, Defendant Kammer is entitled to summary judgment on Plaintiff's retaliation claim.

Similarly, Defendant Preston's pack-up of Plaintiff's over-the-limit property was a direct result of his violation of Rule 51. As explained in Defendant Preston's conduct report, Plaintiff's cell contained legal materials and personal property in excess of the 2.4 cubic feet of property permitted by O.A.C. § 5120-9-33. *Id*. at 198. With the exception of one legal box, Plaintiff appears to acknowledge that the property exceeded the permitted amount but nonetheless maintains that the pack-up was performed in retaliation for his informal complaint. *Id*. at 158-160. Again, Plaintiff fails to allege any facts or present any evidence that would support a finding that his filing of the informal complaint motivated Defendant Preston to confiscate Plaintiff's property. Rather, the undisputed evidence supports a finding that, following Plaintiff's assignment to LPH, Defendant Preston was sent to Plaintiff's cell to move his belongings and found that the property exceeded the permitted amount, in violation of Rule 51. (*Id*. at 158-60, 198; Doc. #155-6, *PageID* #2654). As a result, Defendant Preston issued a conduct report and confiscated Plaintiff's over-the-limit property on the basis of the rule violation and not in retaliation for Plaintiff utilizing the grievance procedure. Thus, Defendant Preston is entitled to judgment as a matter of law with respect to Plaintiff's retaliation claim.

Finally, to the extent that Plaintiff alleges general claims of retaliation against "Defendants" collectively, his claims fail as a matter of law. Again, in order to maintain a § 1983 claim, a Plaintiff must make a clear showing that each named defendant was personally involved in the activity that forms the basis of the complaint. *See e.g.*, *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) ("claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right"); *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596–97 (6th Cir. 2012) ("[C]ategorical references to 'Defendants'" do not meet this standard.). Accordingly, Plaintiff's general claims that "Defendants" retaliation against him are insufficient.

As such, the undersigned **RECOMMENDS** that Defendants' motion for summary judgment on Plaintiff's retaliation claims be **GRANTED** and that Plaintiff's motion on these claims be **DENIED**.

### D. Access-to-Courts under First Amendment

The parties have also moved for summary judgment on Plaintiff's claim regarding his First Amendment "access to courts" claims. (Doc. #152, *PageID* #s 2547-48, *PageID* #s 1223-25; Doc. #155, *PageID* #s 2598-2601). According to Plaintiff, Defendants "prevented Plaintiff from due [diligence] in his criminal case OSCR-10-7130." (Doc. #4, *PageID* #165). Specifically, he alleges that his access to the courts was violated by Defendants Paddock's and Frye's confiscation of his STG legal materials, Defendant Preston's confiscation of his over-the-limit legal materials, and the RCI Warden's policy restrictions on legal books and time in the library. *Id.* at 165-166, 169-180.

Although prisoners have a constitutional right of access to the courts, "meaningful access will vary with the circumstances, and officials are to be accorded discretion in determining how

that right is to be administered." *Bounds v. Smith*, 430 U.S. 817, 821, 830-31, 97 S.Ct. 1491 (1977); *John L. v. Adams*, 969 F.2d 228, 233-34 (6th Cir. 1992). An inmate who claims his access to the courts was denied merely because he was denied access to the prison library fails to state a claim. *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). Rather, the inmate "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim." *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174 (1996). In other words, a plaintiff must demonstrate an actual injury. *Id.* "Actual injury" can be demonstrated by "the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Additionally, the underlying action cannot be frivolous. *Lewis*, 518 U.S. at 353. Thus, "the underlying cause of action ... is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353, n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Defendants are entitled to summary judgment on Plaintiff's access-to-court claims for several reasons. As an initial matter, the only non-frivolous underlying claim that Plaintiff identifies as being prejudiced by Defendants' conduct is his criminal appellate proceedings. However, access-to-courts claims predicated on a challenge to a criminal conviction are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Sampson v. Garrett*, 917 F.3d 880, 881–82 (6th Cir. 2019) (access-to-courts claim that necessarily relies on invalidity of underlying criminal conviction is barred by *Heck*). If Plaintiff wishes to attack the validity of his criminal conviction, he must do so via proceedings in *habeas corpus*. *Id.*

Additionally, to the extent that Plaintiff alleges that Defendants interfered with a non-frivolous underlying claim other than his criminal appellate proceedings, he has failed to specifically identify the type of legal proceedings he had pending in the courts. Here, Plaintiff does not clearly identify an underlying claim other than his criminal appellate proceeding that was frustrated by the confiscation of his legal materials or limited access to the law library. As such, he does not have standing to bring an access-to-courts claim as the undersigned has no way of assessing whether the underlying claim is frivolous. *See e.g.*, *Christopher*, 536 U.S. at 415 ("[T]he predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope."); *Hadix v. Johnson*, 182 F.3d 400, 405-406 (6th Cir. 1999) ("only prisoners with non-frivolous underlying claims can have standing to litigate an access-to-courts action.") (citation omitted).

Finally, Plaintiff has failed to demonstrate that he has suffered an actual injury sufficient to state a viable access-to-courts claim. Instead, he identifies a number of things he "would have" done or issues he "would have" raised in his criminal case had his legal boxes not been confiscated and his library time not been limited. (Doc. #4, *PageID* #s 165-66, 169-79). Therefore, in addition to being barred by *Heck*, such hypothetical injuries are insufficient to establish an injury in fact and, thus, necessitate a finding that Defendants be granted summary judgment.

Accordingly, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment on his access-to-courts claims be **DENIED** and Defendants' motion for summary judgment on Plaintiff's access-to-courts claims be **GRANTED.** Additionally, the undersigned

**RECOMMENDS** that these claims be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.[7]

### E.    Unreasonable Search and Seizure under the Fourth Amendment

Both parties also move for summary judgment on Plaintiff's claim that his rights were violated under the Fourth Amendment of the Constitution. (Doc. #152, *PageID* #s 2548-50; Doc. #155, *PageID* #s 2602, 2604-06). In his Complaint, Plaintiff alleges that his rights were violated by a strip search conducted after the RIB hearing on April 18, 2019 that constituted an illegal search and seizure. (Doc. #4, *PageID* #s 153-54).

The Fourth Amendment to the United States Constitution protects individuals "against unreasonable searches and seizures." U.S. Const. Amend. IV. However, in a prison environment, an inmate's right to privacy is greatly diminished because prison officials must be afforded discretion on how they ensure the safety of inmates, staff, and the general public. *Wilkinson v. Austin,* 545 U.S. 209, 227, 125 S.Ct. 2384 (2005).  Thus, to satisfy Fourth Amendment concerns, searches "must be conducted in a reasonable manner." *Bell v. Wolfish,* 441 U.S. 520, 560 (1979). A search conducted in an abusive fashion "cannot be condoned." *Id.*  The Sixth Circuit has recognized that any type of "strip search"[8] is far more intrusive than a mere cell search or other "pat-down" body search. *See Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 572-573 (6th Cir. 2013).

---

[7] Because Plaintiff is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," and is proceeding *in forma pauperis*, the Court must, at any time, dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a Defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2). Accordingly, the undersigned also uses his authority to dismiss these allegations for failing to state a claim upon which relief may be granted. *Id.*

[8] The term "strip search" is often used as an "umbrella term" that encompasses a variety of behaviors, ranging from the conduct described in *Stoudemire* (stripping to underwear), to a visual inspection of a fully naked individual without scrutiny of body cavities, to a visual body-cavity search which may include inspection of anal and genital areas. The most invasive type of "strip search" would be a manual body-cavity search, involving "some degree of touching or probing of body cavities." *Parkell v. Danberg*, 833 F.3d 313, 327 (3rd Cir. 2016).

In considering whether a particular search is reasonable, courts balance the prison's need for the search with the "invasion of personal rights that the search entails." *Salem v. Michigan Dep't of Corr.*, 643 F. App'x 526, 530 (6th Cir. 2016) (quotation marks and citations omitted). Specifically, courts "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted, while also examining obvious, easy alternatives that accommodate the inmate's privacy interests at little cost to valid penological objectives." *Id.* (quotation marks and citations omitted). Notably, "'detect[ing] and deter[ing] the possession of contraband'" is a legitimate penological objective. *Stoudemire*, 705 F.3d at 573 (quoting *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington,* 132 S. Ct. 11510, 1517 (2012)). Thus, in the absence of evidence to the contrary, courts "must assume that a search of a prisoner is initiated in an effort to detect and deter contraband." *Id.*

In this case, Defendants do not deny that the strip search occurred but maintain that a search following a finding of contraband is routine LOCI policy. (Doc. #152, *PageID* #2549) (citing Doc. #152-1, *PageID* #2586). Indeed, in pleading the claim, Plaintiff acknowledged that the purpose of strip search was to look for contraband, explaining that he was taken from the RIB proceeding and put in a holding cell where he was stripped of his clothes and legal papers and "made to bend over and lift and spread private parts for the officers to examine for contraband[.]" (Doc. #4, *PageID* #154). In his motion for summary judgment, Plaintiff also does not appear to contest that the strip search was conducted for purpose of detecting contraband but, instead, argues that "[t]here is no routine search when [he] was exonerated." (Doc. #155, *PageID* #2606). However, as previously established by the Court, Plaintiff's arguments regarding an alleged exoneration by the FBI or BCI are without merit as they have been found to be unsubstantiated by credible evidence. Moreover,

Plaintiff's argument fails to address his own admissions that the strip search was conducted for the purpose of detecting or deterring contraband, a legitimate penological objective. *See Stoudemire*, 705 F.3d at 573.

Nonetheless, recognizing that a strip search is inherently intrusive, the undersigned also points out that Plaintiff has failed to allege any facts suggesting that the search of his person was conducted in an overly intrusive manner or in a place where he was overly exposed to public view. *Contrast Stoudemire*, 705 F.3d at 575 (double amputee female inmate stated claim for "humiliating strip search in full view of several (or perhaps many) others"); *see also Salem v. Mich. Dept. of Corr.*, 643 F. App'x. 526 (6th Cir. 2016) (defendant not entitled to qualified immunity where strip search of female inmates required them to sit on an unwashed chair wet with bodily fluids from other prisoners and spread their labia in full public view of others, without a legitimate penological justification for public and unsanitary conditions). Instead, Plaintiff alleges in a conclusory fashion that "this search was a[n] illegal search and seizure[]" and that "[n]othing of contraband was found." (Doc. #4, *PageID* #154). Finally, Plaintiff's claim that this search was unreasonable is particularly without merit given his acknowledgement that the prison officials conducted the search in an effort to detect contraband following a RIB proceeding where Plaintiff was found guilty of possessing STG contraband. Construing all the facts in Plaintiff's favor, the undersigned finds that Plaintiff's allegations are insufficient to state a claim under the Fourth Amendment, let alone compel summary judgment in his favor.

Therefore, the undersigned **RECOMMENDS** that the Court **DENY** Plaintiff's request for summary judgment on his strip-search claim under the Fourth Amendment and **GRANT** the

Defendants' motion for summary judgment on this claim. The undersigned also **RECOMMENDS** that the Court **DISMISS** the claim for failure to state a claim upon which relief may be granted.[9]

### F.   Cruel and Unusual Punishment under the Eighth Amendment

Both parties also move for summary judgment on Plaintiff's claims that his rights were violated under the Eighth Amendment. (Doc. #152, *PageID* #s 2548-50; Doc. #155, *PageID* #s 2602, 2604-06). In his motion for summary judgment, Plaintiff alleges that his Eighth Amendment rights were violated when he was subjected to a strip-search following the RIB hearing on April 18, 2019 and when the Defendants labeled him as a sovereign citizen. (Doc. #155, *PageID* #s 2604-06). While these claims do not appear to be clearly alleged in Plaintiff's Complaint, the undersigned finds that a very liberal construction of his Complaint warrants addressing these claims.

The Eighth Amendment protects all people from "cruel and unusual punishments." U.S. Const. Am. VIII. With regard to the treatment of inmates in prison "[t]he Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones, and... 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (first quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), then quoting *Helling v. McKinney*, 509 U.S. 25, 31, 113 S. Ct. 2475, 2480 (1993)). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id*. at 828 (citations omitted).

---

[9] Because Plaintiff is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," and is proceeding *in forma pauperis*, the Court must, at any time, dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a Defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Accordingly, the undersigned also uses its authority to dismiss these allegations for failing to state a claim upon which relief may be granted. *Id*.

The Eighth Amendment's deliberate indifference framework includes both an objective and subjective prong. *Id.* at 834; *Helling*, 509 U.S. at 35-37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. The subjective component, on the other hand, requires inmates to show that prison officials knew of and disregarded an excessive risk, thereby acting with deliberate indifference. *Smith v. DeWine*, 476 F. Supp. 3d 635, 661 (S.D. Ohio 2020) (citing *Farmer*, 511 U.S. at 834, 837-38). Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

*Strip-search*

In his motion for summary judgment, Plaintiff argues that the strip-search conducted after the RIB hearing on April 18, 2019 violated his Eighth Amendment rights. (Doc. #155, *PageID* #s 2605-06). According to Plaintiff, following the hearing, he was forced "to bend over and spread his rectum with his own fingers, as the officer continued saying I can[']t see[,] I can[']t see[,] I still can[']t see[,] forcing plaintiff to hurt himself by spreading wider, physically and mentally[]" and leading to Plaintiff to cry. *Id.*

Based on the foregoing, Plaintiff's claim that the April 18, 2019 strip-search violated his Eighth Amendment rights is without merit. In contrast to the Fourth Amendment, which assesses whether the search is objectively unreasonable, a search is only considered to violate the Eighth Amendment if it constitutes "cruel and unusual punishment," meaning that the official conducting the search acted "with a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 300 (1991). As one court explained:

> The Fourth and Eighth Amendments have different roles to play with respect to bodily searches and protect different categories of constitutional rights. The Eighth Amendment safeguards prisoners against the use of

31

searches that correctional officers subjectively intend as a form of punishment.

*Henry v. Hulett*, 969 F.3d 769, 781 (7th Cir. 2020) (*en banc*) (internal citation omitted).

As set forth above, the Eighth Amendment deliberate indifference framework requires that a plaintiff demonstrate that he faced conditions posing a substantial risk of serious harm, but also that prison officials knew of and disregarded an excessive risk. *Smith*, 476 F. Supp 3d at 661. In this case, Defendants do not deny that a routine strip-search occurred but, instead, point out that there are no facts or evidence showing that the search was conducted with a sufficiently culpable state of mind. (Doc. #152, *PageID* #2550).

Defendants' argument is well-taken. Plaintiff clearly cannot satisfy the subjective prong of the Eighth Amendment deliberate indifference framework. Indeed, Plaintiff has failed to allege the name of the corrections officer performing the search, let alone facts suggesting that he acted with a sufficiently culpable state of mind.  Even accepting Plaintiff's allegations as true, the unknown officer's statements that he could not see, causing Plaintiff to hurt himself, do not indicate a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 300. At most, Plaintiff claims that the unknown officer was negligent in conducting the strip-search.  Allegations of negligence fall short of the deliberate indifference required to state an Eighth Amendment claim.  *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence").

Thus, viewing the record as a whole, a rational trier of fact could not conclude that Defendants acted with the requisite intent when performing a routine strip search.  Consequently, Plaintiff's request for summary judgment on this issue should be denied.  Further, Plaintiff's failure to allege facts sufficient to state a claim under the Eighth Amendment leads the undersigned to also recommend dismissal of this claim.

*Label as a Sovereign Citizen*

In his motion for summary judgment, Plaintiff argues that his Eighth Amendment rights were violated by virtue of Defendants labeling him as a sovereign citizen. (Doc. #155, *PageID* #s 2604-05). According to Plaintiff, being labeled as a sovereign citizen has exposed him to "unreasonable risk of serious harm to be attacked by corrections officers, law enforcement, and Governmental agencies[.]" *Id*. at 2605. In support of these claims, Plaintiff asserts that the "Patriot Act allows law enforcement to go after Sovereign Citizens, domestic terrorist." *Id*.[10]

To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, Plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk. *Farmer,* 511 U.S. at 834; *Woods v. Lecureux,* 110 F.3d 1215, 1222 (6th Cir. 1997); *Curry v. Scott,* 249 F.3d 493, 506 (6th Cir. 2001). "Lack of due care for a prisoner's safety by prison officials is insufficient to support a claim of an Eighth Amendment violation." *Gibson v. Foltz,* 963 F .2d 851, 853 (6th Cir. 1992).

Based on the foregoing, Plaintiff's Eighth Amendment claim is without merit. Plaintiff has failed to raise a genuine issue of fact demonstrating that Defendants' statements that he was a "sovereign citizen" exposed him to a substantial risk of serious harm or that Defendants knew of that risk. *See Farmer,* 511 U.S. at 834, 837. Instead, Plaintiff mistakenly posits that his label as a "sovereign citizen" permits law enforcement "to go after [him]" under the "Patriot Act."

Contrary to Plaintiff's allegations, the Patriot Act limits the definition of "domestic terrorism" to conduct that (1) "involve[s] acts dangerous to human life that are a violation of the criminal laws of the United States or of any State;" and (2) "appear[s] to be intended" (a) "to

---

[10] The undersigned understands Plaintiff's reference to the "Patriot Act" to refer to the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Pub. L. 107-56, 115 Stat. 272 (Oct. 26, 2001). For consistency, the undersigned will likewise refer to this legislation as the Patriot Act.

intimidate or coerce a civilian population;" (b) "to influence government policy by intimidation or coercion;" or (c) "to affect government conduct by mass destruction, assassination, or kidnapping;" and (3) "occur[s] primarily within the territorial jurisdiction of the United States[.]" 18 U.S.C. § 2331(5). Thus, by the very terms of the Patriot Act, only Plaintiff's own conduct, not labels or statements made by others—could subject him to investigation for domestic terrorism.

Further, to state a claim for deliberate indifference under the Eighth Amendment, there must be some resulting harm stemming from a prison official's statements about a prisoner. *See Thompson v. Mich. Dep't of Corr.,* 25 F. App'x 357, 359 (6th Cir. 2002) (affirming district court's dismissal where "[plaintiff's] claim that he was endangered by being labeled a snitch was unsupported by any allegation of resultant harm"); *Gibbs v. Ball,* No. 07–CV–15462–DT, 2009 WL 331604, at *4 (E.D. Mich. Feb. 11, 2009) (no Eighth Amendment violation where plaintiff was labeled a "rat," but did not show actual physical injury). Again, although Plaintiff asserts that he now faces an "unreasonable risk of serious harm[,]" he does not allege, and the record does not show, that he has actually suffered any harm as a result of this label. As a result, Plaintiff's claim that Defendants' act of labeling him as a sovereign citizen violated his Eighth Amendment rights fails as a matter of law.

For these reasons, the undersigned **RECOMMENDS** that the Court **DENY** Plaintiff's request for summary judgment on his Eighth Amendment claims, **GRANT** Defendants' motion for summary judgment on Plaintiff's Eighth Amendment claims, and further **DISMISS** the claims for failure to state a claim upon which relief may be granted.[11]

---

[11] Because Plaintiff is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," and is proceeding *in forma pauperis*, the Court must, at any time, dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a Defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Accordingly, the undersigned also uses his authority to dismiss these allegations for failing to state a claim upon which relief may be granted. *Id.*

### G. Slavery under the Thirteenth Amendment

Defendants also moves for summary judgment on Plaintiff's claim under the Thirteenth Amendment. (Doc. #152, *PageID* #2550). In his Complaint, Plaintiff alleges that the Defendants violated the Thirteenth Amendment's prohibition against slavery and involuntary servitude when he was sentenced to 90 days of confinement in LPH. (Doc. #4, *PageID* #177). The Thirteenth Amendment of the United States Constitution provides:

> Neither slavery nor involuntary servitude except as a punishment for crime, whereof the party shall have been duly convicted, shall exist within the United States, nor any place subject to their jurisdiction.

The undisputed evidence establishes that Plaintiff's confinement in prison occurred as the result of his state court conviction and that his confinement in LPH occurred as the result of an RIB proceeding finding him guilty of Rule 17. In both instances, Plaintiff was duly convicted. Moreover, Plaintiff fails to allege facts showing that he was forced into anything constituting involuntary servitude. Thus, pursuant to the express language of the Thirteenth Amendment, Plaintiff's claim fails as a matter of law.

Therefore, because Plaintiff has failed not only to establish that he is entitled to judgment as a matter of law but has also failed to allege a claim for which relief can be granted, the undersigned **RECOMMENDS** that Defendants' motion for summary judgment on his Thirteenth Amendment claim be **GRANTED** and this claim further be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.[12]

---

[12] Because Plaintiff is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," and is proceeding *in forma pauperis*, the Court must, at any time, dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a Defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Accordingly, the undersigned also uses its authority to dismiss these allegations for failing to state a claim upon which relief may be granted. *Id.*

### H. Due Process under the Fourteenth Amendment

Both Plaintiff and Defendants also move for summary judgment on Plaintiff's due process claims. (Doc. #152, *PageID* #s 2544-47; Doc. #155, *PageID* #2602). In his Complaint, Plaintiff alleges multiple due process violations associated with the RIB proceedings that were held in connection to the conduct reports discussed above. In particular, Plaintiff alleges that his procedural due process rights were violated by the fact that he was not provided with an appeal process for his grievance; the failure to list the names and titles of documents individually; the lack of adequate notice and lack of receiving 24-hour notice of a hearing; RIB's proceeding without jurisdiction; and the failure to allow witnesses to be called. *See* Doc. #4, *PageID* #s 149-58.

Plaintiff's Complaint can also be liberally construed as alleging due process violations in connection with his 90-day sentence to LPH, the strip search conducted in preparation for his transfer, and the confiscation of his property in the pack-up. *See id.* at 153-54, 158-60. Lastly, Plaintiff moves for summary judgment on his "stigma plus" claim, alleging that Defendants violated his due process rights when they labeled him as a "sovereign citizen." (Doc. #155, *PageID* #2606).[13] Each of these claims will be addressed in turn.

The Fourteenth Amendment prohibits a state from depriving any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. To prevail on a due process claim, a plaintiff must first prove that his life, liberty, or property interests were at stake. *Wilkinson,* 545 U.S. at 221. Prisoners have limited liberty interests because "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the

---

[13] Plaintiff also alleges that his due process rights were violated by convicting him of his rule violation when previously exonerated by the FBI/BCI. (Doc. #155, *PageID* #2602). However, as set forth in the Preliminary Matters section above, this claim fails for two reasons. First, this was not a due process claim alleged in his Complaint. *See* Doc. #4. Second, this Court has already determined that no documents were withheld by Defendants or their counsel and that no external investigation ever occurred. (Doc. #147).

considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293 (1995). "Failing to follow proper procedures is insufficient to establish an infringement of a liberty interest." *Grinter v. Knight*, 532 F.3d 567, 574, 576 (citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)). Rather, an inmate's only liberty interest protected by the Due Process Clause is "freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. "To determine whether changed conditions are 'atypical and significant,' a reviewing court considers both the duration and the nature of the more restrictive confinement relative to 'prison norms and to the terms of the individual's sentence.'" *Id.* (quoting *Harden–Bey v. Rutter,* 524 F.3d 789, 792–93 (6th Cir. 2008)).

*RIB Proceedings*

As set forth above, the due process claims set forth in Plaintiff's Complaint largely center around his dissatisfaction with the RIB proceedings. Specifically, Plaintiff argues that he was not afforded procedural due process in the course of the RIB proceedings as demonstrated by the lack of an appeal process for his grievance; the failure to list the names and titles of documents individually; the lack of adequate notice and lack of receiving 24-hour notice of a hearing; RIB's proceeding without jurisdiction; and the failure to allow witnesses to be called. *See* Doc. #4, *PageID* #s 148-154.

In alleging these purported procedural deficiencies, however, Plaintiff has failed to identify a constitutionally protected liberty interest that the prison disciplinary proceedings implicated. Indeed, it is well-settled that a plaintiff cannot premise a § 1983 claim on allegations that an institution's grievance procedure was inadequate and/or unresponsive because there is no inherent constitutional right to an effective grievance procedure in the first place. *See Hewitt v. Helms*, 459 U.S. 460, 467, 103 S.Ct. 864, (1983) (overruled in part on other grounds by *Sandin*, 515 U.S. 472);

37

*Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991). Accordingly, to the extent that Plaintiff's due process claims are premised on inadequate procedures during his RIB proceedings, his claims fail.

*LPH Transfer and Strip Search*

Additionally, Plaintiff's subsequent transfer to LPH is insufficient to implicate a constitutional liberty interest. As a general matter, an inmate's change in confinement conditions does not constitute a deprivation of liberty. *See e.g., Wilkinson,* 545 U.S. at 222–23 ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."), *Sandin*, 515 U.S. at 484-87 ("[D]iscipline in segregated confinement [does] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"). Instead, the only circumstances under which being placed in segregation implicates a liberty interest is when the confinement is an "atypical and significant hardship" in "extreme circumstances," such as when the placement in segregation is of indefinite duration or is excessively long. *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)).

Here, Plaintiff was placed in LPH for 90 days, which is not an indefinite or excessively long period of time. *See Bradley v. Evans,* No. 985861, 2000 WL 1277229, at *5–7 (6th Cir. Aug. 23, 2000) (holding that fourteen months in administrative segregation did not constitute an atypical and significant hardship); *see also Perry v. Erdos*, No. 1:22-cv-178, 2022 WL 2256901, at *3 (S.D. Ohio June 22, 2022), *report and recommendation adopted*, 2022 WL 3083522 (S.D. Ohio Aug. 3, 2022) (citations omitted) ("Courts in this District have expressly held that assignment to extended

38

restrictive housing, ODRC's most restrictive security level, does not implicate a due process liberty interest").

Further, Plaintiff's contention that he suffered an "atypical and significant hardship" because he was subject to a routine strip search prior to his transfer to LPH is without merit. *See Drummer v. Luttrell*, 75 F. Supp. 2d 796 (W.D. Tenn. 1999) (strip search of inmate as part of disciplinary procedure did not support inmate's Section 1983 action against corrections officials alleging due process violations, since officials' actions did not impose atypical and significant hardship upon inmate), *aff'd*, 234 F.3d 1268 (6th Cir. 2000); *Fatir v. Phelps*, No. CV 18-933-CFC, 2019 WL 2162720, at *8 (D. Del. May 17, 2019) ("a strip search does not, as a matter of law, impose an atypical and significant hardship in relation to the ordinary incidents of prison life as required under *Sandin* in order to constitute a 'liberty interest'") (internal citations omitted).

In short, Plaintiff has not identified any "atypical or significant hardships" arising from his placement within the prison's LPH sufficient to create a liberty interest. Plaintiff's Complaint fails allege that the RIB proceedings resulted in the lengthening of his prison sentence, the withdrawal of good-time credits, or the deprivation of any necessities of life. In the absence of such allegations, Plaintiff's disciplinary sentence to 90 days in LPH is also insufficient to implicate federal due process concerns.

*Confiscation of Property*

Similarly, Plaintiff's claim that his property was taken from him without due process is without merit. While the Due Process Clause of the Fourteenth Amendment protects against the unlawful taking of a person's property by public officers, "[i]f satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury." *Jefferson v. Jefferson County Pub. Sch. Sys.*, 360 F.3d 583, 587-88 (6th Cir. 2004).

Accordingly, in order to state a procedural due process claim under § 1983 "the plaintiff must attack the state's corrective procedure as well as the substantive wrong." *Meyers v. City of Cincinnati*, 934 F.2d 726, 731 (6th Cir. 1991) (quoting *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983)). A plaintiff "may not seek relief under Section 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress [his] due process violations." *Jefferson*, 360 F.3d at 588.

In this case, Plaintiff fails set forth any explanation as to why such state remedies are inadequate. Instead, Plaintiff simply states that "Post Deprivation Remedies not available" and affirmatively pleads state law claims related to the deprivation of his property, including theft, larceny, conversion, and extortion, thus suggesting that he believes such remedies to be adequate to address his claims. (Doc. #4; *PageID* #s 159, 176; *see also* Doc. #155, *PageID* #2602); *see also Fox v. Van Oosterum*, 176 F.3d 342, 349 (6th Cir. 1999) (citing *Hudson*, 468 U.S. at 534-36) ("State tort remedies generally satisfy the post[-]deprivation process requirement of the Due Process Clauses."). Therefore, Plaintiff's property claim also fails as a matter of law.

*Stigma Plus*

Finally, Plaintiff also alleges his rights were violated when he was "ridiculed, slandered, and defamed by [correction officers] and including the case manager in the LPH/hole who requested [Plaintiff] to certify his transfer based on a security review." (Doc. #4, *PageID* #154). According to Plaintiff, these correction officers defamed him by referring to him as a "sovereign citizen…." *Id*. As stated, Plaintiff's Complaint appears to only plead a state law claim for defamation. *See id*. However, in his motion for summary judgment, Plaintiff argues that these allegations also support a "stigma plus" claim under the Due Process Clause of the Fourteenth Amendment. *See* Doc. #155, *PageID* #2606. Thus, in liberally construing Plaintiff's Complaint,

the undersigned will also address Plaintiff's claim that labeling him as a "sovereign citizen" injured his reputation in violation of the Due Process Clause.

In *Paul v. Davis*, the Supreme Court made clear that reputation, standing alone, is not a constitutionally protected liberty or property interest. 424 U.S. 693, 701, 96 S.Ct. 1155 (1976). In so finding, the Supreme Court explained:

> While we have in a number of our prior cases pointed out the frequently drastic effect of the "stigma" which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either "liberty" or "property" by itself sufficient to invoke the procedural protection of the Due Process Clause.

> Thus, the stigma alleged by plaintiffs does not, without more, impute a liberty interest sufficient to trigger due process protections. *See also Mertik v. Blalock*, 983 F.2d 1353, 1362 (6th Cir.1993) (stating "[i]njury to reputation, standing alone, is not a liberty interest protected by the Fourteenth Amendment").

*Id*.

Therefore, consistent with *Paul v. Davis*, the Sixth Circuit requires that a plaintiff alleging a stigma plus claim "show that the state's action both damaged his or her reputation (the stigma) and that it 'deprived [him] of a right previously held under state law' (the plus)." *Doe v. Michigan Dep't of State Police*, 490 F.3d 491, 502 (6th Cir. 2007) (citing *Paul*, 424 U.S. at 704-05); *see also Dean v. McWherter,* 70 F.3d 43, 45 (6th Cir.1995) (The stigma from being labelled mentally ill "does not, without more, impute a liberty interest sufficient to trigger due process protections."). Thus, no matter how derogatory, a statement alone is insufficient to invoke due process concerns. *See e.g*., *Mertik v. Blalock*, 983 F.2d 1353, 1362 (6th Cir. 1993) ("Defamatory publications, standing alone, do not rise to the level of a constitutional claim, no matter how serious the harm to reputation.") (citing *Paul*, 424 U.S. at 712); *Reyes v. Supervisor of DEA,* 834 F.2d 1093, 1098 (1st Cir. 1987) ("The Supreme Court has clearly held that the interest in a good name or good reputation

does not trigger the Due Process Clause, in spite of the fact that branding someone a criminal (or a terrorist…) entails substantial disadvantages.") (citing *Paul,* 424 U.S. at 711–12).

In this case, Plaintiff has failed to sufficiently plead a claim for stigma plus. Nowhere in his Complaint does Plaintiff allege that Defendants' labeling him as a "sovereign citizen" resulted in him being "deprived… of a right previously held under state law." *Doe*, 490 F.3d at 502; *see also Zherka v. Amicone*, 634 F.3d 642, 645-46 (2d Cir. 2011) ("Hurt feelings or a bruised ego are not by themselves the stuff of constitutional tort."). In sum, since Plaintiff does not allege that Defendants labeling him as a "sovereign citizen" resulted in a deprivation of any liberty or property protected by due process, he does not state a stigma plus claim for a violation of his due process rights.

Therefore, because Plaintiff has failed not only to establish that he is entitled to judgment as a matter of law but has also failed to allege a claim for which relief can be granted, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment on his due process claims be **DENIED** and Defendants' motion for summary judgment on Plaintiff's due process claims be **GRANTED**. Additionally, the undersigned **RECOMMENDS** that these claims be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.[14]

### I.        Qualified Immunity

Defendants also contend that they are entitled to summary judgment on the issue of qualified immunity for the claims Plaintiff asserts against them in their individual capacities. (Doc.

---

[14] Because Plaintiff is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," and is proceeding *in forma pauperis*, the Court must, at any time, dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a Defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Accordingly, the undersigned also uses his authority to dismiss these allegations for failing to state a claim upon which relief may be granted. *Id*.

#152, *PageID* #s 2550-52). Plaintiff does not address these arguments in his summary judgment briefings, except to note that he had "offered Defendants immunity… but the Defendants refused." (Doc. #173, *PageID* #2980).

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). In so doing, "qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808 (2009).

A governmental official is entitled to immunity if the facts alleged do not make out a violation of a constitutional right, or if the alleged constitutional right was not clearly established at the time of the defendant's alleged misconduct. *Id*. Additionally, while a defendant bears the initial burden of pleading the defense of qualified immunity, it is the plaintiff who "bears the ultimate burden of proof to show that [government officials] are not entitled to qualified immunity." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012) (*quoting Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005)).

Defendants maintain that they are entitled to qualified immunity on Plaintiff's claims. (Doc. #152, *PageID* #s 2550-52). Thus, the burden shifts to Plaintiff to establish that Defendants are not entitled to this defense.  However, as explained above, Plaintiff has failed to demonstrate that his constitutional rights have been violated, even when viewed in the light most favorable to him. As such, Plaintiff is unable to carry his burden of to show that Defendants are not entitled to qualified immunity.

Accordingly, the undersigned **RECOMMENDS** that the Court find that Defendants are immune from Plaintiff's claims and are entitled to summary judgment in their favor as a matter of law.

### J.  Plaintiff's State Law Claims

Finally, Plaintiff moves for summary judgment on his state law claim of defamation. (Doc. #155, *PageID* #s 2602-04). In response, Defendants contend that "Plaintiff has offered no evidence which demonstrates that the publication of his status as a sovereign citizen damages his reputation, exposed him to public hatred, contempt, ridicule, shame or disgrace, or affecting his trade, business or profession." (Doc. #156, *PageID* #2833) (citing *Jackson v. City of Columbus*, 117 Ohio St. 3d 328, 331). Alternatively, Defendants request that all of Plaintiff's state law claims be dismissed for lack of subject matter jurisdiction. (Doc. #152, *PageID* #2552; Doc. #156, *PageID* #s 2832-33).

Defendants' argument is well-taken. As set forth above, Plaintiff has failed to establish that any of his constitutional rights have been violated. Accordingly, if the Court accepts the foregoing recommendations, the undersigned **RECOMMENDS** that the Court also decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *Harper v. AutoAlliance Int'l, Inc.,* 392 F.3d 195, 210 (6th Cir. 2004) (although the exercise of supplemental jurisdiction under 28 U.S.C. § 1367 is a matter of discretion, when a court dismisses all federal claims before trial, it generally should dismiss the state law claims as well); *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 53 (2d Cir. 1986) ("federal courts, absent exceptional circumstances, should abstain from exercising [supplemental] jurisdiction when federal claims in a case can be disposed of by summary judgment.").

## IV. CONCLUSION

For all the foregoing reasons, the undersigned **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** for failure to exhaust administrative remedies under the PLRA. However, even if the Court does not accept this recommendation, the undersigned further **RECOMMENDS** that the Defendants' motion for summary judgment be **GRANTED** on all remaining claims and that Plaintiff's motion for summary judgment on all claims arising under the United States Constitution be **DENIED**. Accordingly, it is **RECOMMENDED** that:

1.   Defendants' Motion for Summary Judgment (Doc. #152) be **GRANTED** in its entirety**.**

2.   Plaintiff's Motion for Summary Judgment (Doc. #155) be **DENIED** on all of Plaintiff's claims arising under the United States Constitution;

3.   The Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims; and

4.   This case be **TERMINATED** on the Court's docket.

January 31, 2024                                        *s/Peter B. Silvain, Jr.*
                                                       Peter B. Silvain, Jr.
                                                       United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).